UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA              :
:
　　　　　- v. -                          :
:    23 Cr. 113 (GHW)
JAMES KELLY,                          :
:
　　　　　Defendant.                       :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT JAMES KELLY'S MOTIONS *IN LIMINE*

　　　　　　　　　　　　　　　　　　　　　　Michael D. Bradley, Esq.
　　　　　　　　　　　　　　　　　　　　　　BRADLEY LAW FIRM PC
　　　　　　　　　　　　　　　　　　　　　　2 Park Avenue, 20th Floor
　　　　　　　　　　　　　　　　　　　　　　New York, New York 10016
　　　　　　　　　　　　　　　　　　　　　　(212) 235-2089

TO:　　Damian K. Williams, Esq.
　　　　United States Attorney
　　　　Southern District of New York

Attn:　Katherine Cheng
　　　　Georgia Kostopoulos
　　　　David Felton
　　　　Assistant United States Attorneys

### DEFENDANT JAMES KELLY'S MOTION IN LIMINE

The defense respectfully submits the following motion *in limine* in advance of trial to preclude cross-examination of Mr. Kelly in connection with his prior conviction; to preclude the identification of Mr. Kelly by a police officer; and to preclude the government from eliciting an in-court identification of Mr. Kelly by any witness.

### Argument

**I.  Should Mr. Kelly Decide To Testify, The Government Should Not Be Permitted To Cross-Examine Him About His Only Prior Conviction, Which Is More Than 10 Years Old, And Whose Probative Value Does Not Outweigh Its Prejudicial Effect.**

If Mr. Kelly asserts his right to testify in his own defense, the government should not be permitted to cross-examine him about his only prior conviction, for criminal possession of a weapon in the second degree, because the government cannot meet its burden, pursuant to Fed. R. Evid. 609(a), of showing that the probative value of this conviction outweighs its prejudicial effect to Mr. Kelly.

On August 10, 2012, Mr. Kelly was arrested by officers of the 48th Precinct for possession of a loaded gun. The case proceeded to trial, and Mr. Kelly was convicted of criminal possession of a weapon in the second degree on January 30, 2013. He was subsequently sentenced to 42 months of imprisonment. He was released from state custody on February 4, 2016.

The circumstances weigh strongly against admission of this conviction under Rule 609. As a threshold matter, the government has not produced a certified judgment of conviction showing the statute of conviction, the date of conviction and the sentence imposed. Instead, it has produced only a NCIC criminal history printout.

Looking next at the traditional factors bearing on "probative value" as to this conviction, *see United States v. Hayes,* 553 F.3d 824, 828 (2d Cir. 1977) (outlining the five criteria generally used for evaluating the Rule 609 balancing of probative value versus prejudice):

- The age of the conviction gives it low probative value. Mr. Kelly was convicted on January 30, 2013, nearly 11 years ago. While the standard of Fed. R. Evid. 609(b) does not apply, because Mr. Kelly was released from confinement for this conviction in February 2016, which is within the ten-year period, the reasoning underlying the limitation on the use of convictions more than ten-years old is still relevant. As the Rules Committee noted, "[i]t is intended that convictions over 10 years old will be admitted very rarely and only In exceptional circumstances." Adv. Comm. Notes, 1974 Enactment, Fed. R. Evid. 609(b). The Second Circuit has repeatedly emphasized that recency is directly correlated to probativeness. *Hayes,* 553 F.3d 824.

- Gun possession is not veracity-related and, therefore, has low impeachment value.

- The past conviction for gun possession is similar to the 924(c) charge here, and could lead a jury to wrongly conclude that it must have been Mr. Kelly with the gun, since he previously possessed a loaded gun.

- Mr. Kelly's credibility is important, to be sure, as is the testimony of any criminal defendant, but, again, the crimes are entirely on video, so this is not a credibility battle.

Thus, none of the factors weigh in favor of admission, particularly in light of the age of the conviction and the similarity to the instant charge, which is highly prejudicial to the defendant's fair trial right.

Should Mr. Kelly take the stand and affirmatively claim that he has never been in trouble with the law before, the government can re-raise the issue.

**II.   The Government Should Not Be Permitted To Introduce The Identification Of Mr. Kelly By A Police Officer Or To Seek To Elicit An In-Court Identification Of Mr. Kelly By Any Witness.**

The government should be precluded from offering evidence at trial that ten days after the robbery, a police officer identified Mr. Kelly on a surveillance video from the night of the robbery taken in the apartment building in which Mr. Kelly resides, whether that evidence is offered through another witness as "background" or the officer is called to testify. Furthermore, the government should not be permitted to try to elicit an in-court identification of Mr. Kelly from any witness to the robbery.

Identification is a contested issue in this case. No employee of the deli or other witness has identified Mr. Kelly as the robber. No photo arrays have been shown (to the defense's knowledge – none have been produced in discovery). No line-ups have been performed. The only identification of Mr. Kelly is that of Police Officer Joseph Whelan, who has indicated that Mr. Kelly is the person shown in the video taken in his own apartment building at around the time of the robbery. The government, it appears, will try to use this identification of Mr. Kelly in his building, and through compilation of surveillance video footage from the deli, the street, and the apartment building, seek to show that, based on Officer Whelan's identification, Mr. Kelly must have been the robber.

**A. The Court should preclude any evidence regarding a police officer's prior identification of Mr. Kelly as the person on the surveillance video taken in the stairwell of his apartment building.**

Mr. Kelly resides ███████████████████████████████ in the Bronx. In the Complaint filed against him (ECF No. 1), the government asserts that "an officer who previously arrested Kelly" identified him as the person shown on security camera video from 820 E. 180th Street around the time of the robbery that is the subject of this case. ECF No. 1, at ¶ 4(j). The Complaint further states that this officer reviewed the video on January 25, 2023, ten days after the robbery. *Id.* The only additional information about this "identification" provided in discovery by the

government is that Police Officer Pedro Silverio showed Police Officer Whelan the video from the apartment building, and "PO Whelan recognize the subject James Kelly due to PO Whelan being James Kelly last arresting officer on 12/05/2022 for Robbery 2nd, arrest B22643419 (sealed)."

The government has provided no details as to the procedure by which the officer was shown the video or made the identification, but even the terse description from the discovery raises serious concerns about suggestiveness. The Due Process Clause protects accused individuals from unreliable identifications that result from impermissibly suggestive procedures. *Manson v. Brathwaite*, 432 U.S. 98, 113, 116 (1977). Mr. Kelly is described as being "the subject" at the time that the investigating officer shows Officer Whelan the video, raising the strong likelihood that Officer Whelan was told that his fellow officers suspected Mr. Kelly was the robber at the time they showed him the video. Why was this particular officer shown the video? Was it because his fellow officers had run a search of all Black males with an arrest history residing in that building, pinpointed Mr. Kelly as being around the right age and height, and then asked this particular officer if it was Mr. Kelly in the video, a procedure that would render the identification in violation of due process? Or because his fellow officers had searched the NYPD database for anyone recently arrested for robbery in the area – even if, as in the case of the December 5, 2022 arrest of Mr. Kelly, that arrest was dismissed – found Mr. Kelly and then found that Officer Whelan had arrested him, which led them to show Officer Whelan the video and ask if that was Mr. Kelly?

Because the government cannot meet its burden of showing that Officer Whelan's identification of Mr. Kelly comported with due process and the relevant case law on identification procedures, this out-of-court identification should not be permitted into evidence.

### B. Officer Whelan Should Not Be Permitted To Identify Mr. Kelly In Court As The Person Shown On The Security Video From 820 E. 180th Street

Officer Whelan, who previously arrested Mr. Kelly in December 2022, should not be permitted to offer an in-court identification of Mr. Kelly as the person shown on security camera video from January 15, 2023. This testimony should be excluded under Rule 403 of the Federal Rules of Evidence, as the high risk of prejudicing the jury far outweighs any probative value. It should also be excluded under the Confrontation Clause, because defense counsel will not be able to effectively impeach the identification without prejudicing Mr. Kelly by revealing the circumstances of his encounter with this police officer.

According to the discovery, Officer Whelan is familiar with Mr. Kelly because on the evening of December 5, 2022, he arrested Mr. Kelly in front of a deli on Southern Boulevard that had been robbed that morning. This arrest was later dismissed and sealed.

The Second Circuit recently considered the high risk of prejudice to the defendant of identification testimony from law enforcement personnel: "Identification testimony from law enforcement or corrections personnel may increase the possibility of prejudice to the defendant either by highlighting the defendant's prior contact with the criminal justice system, if the witness's occupation is revealed to the jury, or by effectively constraining defense counsel's ability to undermine the basis for the witness's identification on cross-examination, if the witness's

occupation is to remain concealed." *United States v. Walker*, 974 F.3d 193, 205 (2d Cir. 2020) (quoting *United States v. Pierce*, 136 F.3d 770, 776 (11th Cir. 1998)).

Allowing Officer Whelan to identify the defendant, even if the circumstances of their prior contact are sanitized, informs the jury that Mr. Kelly has had prior contact with law enforcement. The jurors will wonder why Mr. Kelly is so memorable to this police officer. The identification testimony is likely to create unfair prejudice, and "arouse an emotional reaction among the jurors, especially those who harbor strong feelings about recidivism and the premature release of those in prison for crimes." *United States v. Calhoun*, 544 F.2d 291, 296 (6th Cir. 1976). Diverse courts have acknowledged the high risk of unfair prejudice to the defendant when identification testimony comes from a law enforcement or corrections officer. *See Pierce*, 136 F.3d 770; *United States v. Henderson*, 68 F.3d 323, 327 (9th Cir.1995); *Calhoun*, 544 F.2d at 296.

In addition, Mr. Kelly's ability to confront the witness will be limited because of the context in which the officer came into contact with Mr. Kelly. The defendant is presented with an impossible choice: divulge his prior interactions with law enforcement, which is almost certain to prejudice the jury into believing he committed the robbery he is on trial for if he was previously arrested for a deli robbery, or forego his opportunity to forcefully cross-examine the witness and reveal flaws in his testimony. Any effort to sanitize this identification testimony by concealing the officer's identity and the means by which he obtained familiarity with the defendant would "constrain[ ] defense counsel's ability to undermine the basis for the witness's identification." *Pierce*, 136 F.3d at 776.

In *Calhoun,* the Court held a parole officer's identification of the defendant from a surveillance photograph unduly prejudicial, noting that the defendant could not cross-examine the officer concerning the identification without revealing prejudicial information about his criminal record. 544 F.2d 291. The Second Circuit has instructed that the district court must consider sources of "other adequate identification testimony" when analyzing the probative value of law enforcement identification testimony. *Walker*, 974 F.3d at 206.

Here, the jurors will watch the surveillance video for themselves, observe the defendant in court throughout trial, and make their own assessment as to the identity of the person on video. *See United States v. LaPierre*, 998 F.2d 1460, 1465 (9th Cir. 1993), as amended (Aug. 19, 1993) ("The jury, after all, was able to view the surveillance photos of [the defendant] and make an independent determination whether it believed that the individual pictured in the photos was in fact [the defendant].") Mr. Kelly's appearance has not substantially changed since January 15, 2023. Thus, the probative value of an in-court identification by Officer Whelan is low.

The Second Circuit agrees that the risk of prejudice to the defendant is high and dictates the District Court should use its discretion to "manage that risk." *Walker*, 974 F.3d at 206. It is clear that in Mr. Kelly's case, the risk of prejudice to the defendant by revealing this prior interaction with law enforcement and curtailing his ability to cross-examine the witness far outweighs any probative value that the officer's identification testimony could provide, and should be excluded.

### C. No In-Court Identification Procedure By A Witness to the Robbery Should Be Permitted.

The defense moves to preclude any effort by the government to elicit an in-court identification of the defendant by any witness to the robbery, since no prior identification has been made. Such an identification procedure would violate due process. In the alternative, the defense asks that this Court order that, if the government is permitted to make such an identification effort at trial, the government first conduct an out-of-court lineup and, at trial, the defendant be permitted, during any identification witness's testimony, to sit amongst other people of the same general physical description as that of the robber, in order to reduce the suggestiveness of this proceeding.

An in-court identification procedure, with no prior identification made by a photo array or line-up out of court, is highly disfavored because of its extreme suggestiveness and the persuasive force that comes from a witness identifying "that man" as the person who committed the crime. *See, e.g., United States v. Archibald*, 734 F.2d 938 (2d Cir. 1984); *Kampshoff v. Smith*, 698 F.2d 581, 585 (2d Cir. 1983) (a juror's "doubts over the strength of the evidence of a defendant's guilt may be resolved on the basis of the eyewitness' seeming certainty when he points to the defendant and exclaims with conviction that veils all doubt, '[T]hat's the man!' " (second alteration in original) (quoting *United States v. Wade*, 388 U.S. 218, 235-26 (1967). Suggestive procedures such as in-court showups are disapproved of "because they increase the likelihood of misidentification," and it is the admission of testimony carrying such a "likelihood of misidentification which violates a defendant's right to due process." *Neil v. Biggers*, 409 U.S. 188, 198 (1972).

"[I]t follows that federal courts should scrutinize all suggestive identification procedures ... to determine if they would sufficiently taint the trial so as to deprive the defendant of due process." *United States v. Bouthot*, 878 F.2d 1506, 1516 (1st Cir. 1989) (affirming lower court's finding of due process violation where in-court identifying witness had merely observed accused for thirty seconds from at least ten feet away over twenty months before and was unable to identify accused among photographs of ten individuals). Accordingly, if the government seeks to elicit an identification from any of the witnesses at trial, this Court must first determine whether an in-court identification, in the circumstances of this case, would be impermissibly suggestive, and if so, whether the identification testimony is nevertheless reliable. (Of course, if the government does not intend to elicit identification testimony, no action is necessary from the Court).

<u>Suggestiveness</u>: The first question is whether having an in-court identification procedure in this case would be unduly suggestive. It would. First, "[a]ny witness, especially one who has watched trials on television, can determine which of the individuals in the courtroom is the defendant, which is the defense lawyer, and which is the prosecutor." *Archibald*, 734 F.2d at 941; *see also United States v. Rogers*, 126 F.3d 655, 657-58 (5th Cir. 1997) ("[I]t is obviously suggestive to ask a witness to identify a perpetrator in the courtroom when it is clear who is the defendant."). Second, it falls squarely within the factual rubric of the Second Circuit's decision in *Archibald*, finding the in-court identification of the defendant, who was the only African-American male and seated at counsel table, to be so clearly suggestive as to be impermissible. *Archibald*, at 941-43. Here, the defendant will be the only young African-American male seated at counsel table.

Reliability: In *Neil v. Biggers*, the Supreme Court set forth factors to be considered in determining whether identification testimony is independently reliable. 409 U.S. at 199-200 (the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation). Applying those factors here, the only one weighing in favor of reliability is that the witnesses were, presumably, attentive to what the robber looked like; but, weighing heavily against reliability is that the deli employees did not have a clear opportunity to view the robber at the time of the crimes (because the robber's face was obscured); the deli employees were not able to provide detailed descriptions even at the time of the crime; the interaction between the deli employees and the robber were quite short (between approximately one to three minutes in length); and the crime occurred in January 2023, so a year will have elapsed at the time of trial. *See, e.g., Biggers*, 409 U.S. at 200 (a lapse of even seven months between the crime and the identification is a serious negative factor); *United States v. Greene*, 704 F.3d 298 (4th Cir. 2013) (in-court identification unreliable where robber in bank short time, and wearing wig and sunglasses); *Rogers*, 126 F.3d at 657 (finding in-court identification unreliable where ten months had passed since the crime, and robber was wearing wraparound sunglasses and a baseball cap).

Were a witness to identify the defendant as the robber, such an identification would not be sufficiently reliable to outweigh "the corrupting effect of the suggestive identification itself," and thus would violate due process. *Brathwaite*, 432 U.S. at 114. This Court should exclude any in-court identification testimony from trial. *See, e.g., United States v. Beeler*, 62 F.Supp.2d 136 (D. Me. 1999).

If an in-court identification procedure is allowed, this Court has "an obligation to ensure that the in-court procedure … [does] not simply amount to a show-up." *Archibald*, at 941. In *Archibald*, the Second Circuit found that the in-court identification of the defendant at trial "was so clearly suggestive as to be impermissible," *id.*, at 942-43, where the trial court refused the defendant's request to rearrange the seating in the courtroom, so that the defendant was not seated at counsel table, and to secure the presence in the courtroom of other people of the defendant's approximate description. *Id.*, at 941-42.

If the government intends to attempt an in-court identification, the government should be directed to hold a pretrial line-up in order "to assure that the identification witness will first view the suspect with others of like description rather than in the courtroom sitting alone at the defense table," *United States v. Brown*, 699 F.2d 585, 593-94 (2d Cir. 1983), and, then, in trial, during the identification testimony, the defendant should be seated not at counsel table, but among other Black males of similar physical description. *Archibald*, at 943. Without such protective measures, any in-court identification procedure would violate due process.

## Conclusion

For the reasons set forth above, Mr. Kelly respectfully submits that the government should not be permitted to cross-examine him about his prior conviction should he choose to testify.

Additionally, the identification of Mr. Kelly by Officer Whelan should be precluded, and no in-court identification of Mr. Kelly should be permitted.

Dated: November 20, 2023
    New York, New York

Respectfully Submitted,

_____

Michael D. Bradley, Esq.
BRADLEY LAW FIRM PC
Attorney for Defendant
James Kelly
2 Park Avenue Floor 20
New York, New York 10016