UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

JAMES KELLY,

                Defendant.

23 Cr. 113 (GHW)

**GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE***

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Katherine Cheng
Georgia V. Kostopoulos
David R. Felton
Assistant United States Attorneys
    *Of Counsel*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 1

FACTUAL BACKGROUND ............................................................................... 2

ARGUMENT ....................................................................................................... 4

    I. The Court Should Permit the Government to Cross-Examine the Defendant
    About His Prior Felony Conviction if the Defendant Testifies in a Manner
    Inconsistent With His Prior Conviction .......................................................... 5

    II. There Is No Basis to Suppress Officer Whelan's Identification of the
    Defendant ........................................................................................................ 8

        A. Officer Whelan's Confirmatory Identification of the Defendant Is Reliable .... 8

        B. Officer Whelan's Identification of the Defendant Is Highly Probative and
        Minimally Prejudicial ............................................................................ 14

        C. The Defendant Fails to Identify Any Basis to Preclude Any In-Court
        Identification of the Defendant by Any Other Government Witnesses................ 20

CONCLUSION.................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*Brisco v. Ercole,*
    565 F.3d 80 (2d Cir. 2009) ........................................................................... 14, 15

*Franco v. Lee,*
    2013 WL 704655 (E.D.N.Y. Feb. 26, 2013) ...................................................... 18

*Gilbert v. Sup't of Collins Corr. Fac.,*
    2004 WL 287683 (S.D.N.Y. Feb. 11, 2004) ...................................................... 18

*Jarrett v. Headley,*
    802 F.2d 34 (2d Cir. 1986) ................................................................................. 15

*Manson v. Brathwaite,*
    432 U.S. 98 (1977) .............................................................................. 14, 15, 28

*Neil v. Biggers,*
    409 U.S. 188 (1972) ........................................................................................... 15

*Parker v. Randolph,*
    442 U.S. 62 (1979) ............................................................................................. 23

*Perry v. New Hampshire,*
    565 U.S. 228 (2012) ..................................................................... 14, 15, 27

*Raheem v. Kelly,*
    257 F.3d 122 (2d Cir. 2001) ............................................................................... 14

*Samuels v. Senkowski,*
    77 F. App'x 69 (2d Cir. 2003) ............................................................................ 27

*Simmons v. United States,*
    390 U.S. 377 (1968) ........................................................................................... 14

*Sims v. Sullivan,*
    867 F.2d 142 (2d Cir. 1989) ........................................................................ 15, 27

*Stallings v. Wood,*
    2006 WL 842380 (E.D.N.Y. Mar. 27, 2006) .................................................... 19

*United States v. Anglin,*
    169 F.3d 154 (2d Cir. 1999) ............................................................................... 27

*United States v. Archibald,*
    734 F.2d 938 (2d Cir. 1984) ............................................................................... 27

*United States v. Arroyo,*
    600 F. App'x 11 (2d Cir. 2015) ......................................................................... 20

*United States v. Bermudez,*
    529 F.3d 158 (2d Cir. 2008) .......................................................................... 22-23

*United States v. Beverly*,
   5 F.3d 633 (2d Cir. 1993) ................................................................................. 13-14

*United States v. Brown*
   2022 WL 5189661 (E.D.N.Y. Oct. 5, 2022) ..................................... 15, 17, 19, 25

*United States v. Calhoun*,
   544 F.2d 291 (6th Cir. 1976) ..................................................................... 25

*United States v. Caming*,
   968 F.2d 232 (2d Cir. 1992) ....................................................................... 6

*United States v. Concepcion*,
   983 F.2d 369 (2d Cir. 1992) ..................................................................... 15

*United States v. DiTommaso*,
   817 F.2d 201 (2d Cir. 1987) ..................................................................... 14

*United States v. Donald*,
   2009 WL 960209 (W.D.N.Y. Apr. 7, 2009) ............................................. 18

*United States v. Estrada*,
   430 F.3d 606 (2d Cir. 2005) ..................................................................... 11

*United States v. Faison*,
   393 F. App'x 754 (2d Cir. 2010) ............................................................. 24

*United States v. Frazier*,
   2019 WL 761912 (S.D.N.Y. Feb. 21, 2019) ........................................... 12

*United States v. Graziano*,
   558 F. Supp. 2d 304 (E.D.N.Y. 2008) ..................................................... 23

*United States v. Hardy*,
   2011 WL 7782582 (S.D.N.Y. Jan. 25, 2011) ......................................... 18

*United States v. Harris*,
   2018 WL 1517216 (D. Vt. Feb. 27, 2018) ............................................. 18

*United States v. Hayes*,
   553 F.2d 824 (2d Cir. 1977) ..................................................................... 11

*United States v. Henderson*,
   68 F.3d 323 (9th Cir. 1995) ..................................................................... 24

*United States v. Jimenez*,
   2020 WL 7231062 (S.D.N.Y. Dec. 8, 2020) ..................................... 17, 18

*United States v. Johnson*,
   469 F. Supp. 3d 193 (S.D.N.Y. 2019) ..................................................... 24

*United States v. LaPierre*,
   998 F.2d 1460 (9th Cir. 1993) ................................................................. 25

*United States v. Livoti*,
   196 F.3d 322 (2d Cir. 1999) ................................................................. 21, 23

*United States v. Lopez*,
   979 F.2d 1024 (5th Cir. 1992) ...................................................................... 12

*United States v. Maldonado-Rivera*,
   922 F.2d 934 (2d Cir. 1990) ................................................................. 14, 15

*United States v. Martinez*,
   992 F. Supp. 2d 322 (S.D.N.Y. 2014) ........................................................... 6

*United States v. Matthews*,
   20 F.3d 538 (2d Cir. 1994) .......................................................................... 27

*United States v. Mauro*,
   80 F.3d 73 (2d Cir. 1996) ............................................................................ 24

*United States v. Mesbahuddin*,
   2011 WL 3841385 (E.D.N.Y. Aug. 26, 2011) .............................................. 13

*United States v. Morales*,
   505 F. App'x 30 (2012) ............................................................................... 23

*United States v. Nieves*,
   2021 WL 1240472 (S.D.N.Y. Apr. 1, 2021) ............................................ 17, 19

*United States v. Noble*,
   2008 WL 140966 (S.D.N.Y. Jan. 11, 2008) ................................................... 6

*United States v. Pace*,
   10 F.3d 1106 (5th Cir. 1993) ...................................................................... 25

*United States v. Payton*,
   159 F.3d 49 (2d Cir. 1998) .......................................................................... 12

*United States v. Pierce*,
   136 F.3d 770 (11th Cir. 1998) .................................................................... 25

*United States v. Rahim*,
   339 F. App'x 19 (2d Cir. 2009) ............................................................. 21, 23

*United States v. Ramos-Cruz*,
   2014 WL 9931353 (W.D.N.Y. July 15, 2014) .............................................. 18

*United States v. Roldan-Zapata*,
   916 F.2d 795 (2d Cir. 1990) ................................................................. 21, 23

*United States v. Rosa*,
   11 F.3d 315 (2d Cir. 1993) .......................................................................... 24

*United States v. Simmons*,
   923 F.2d 934 (2d Cir. 1991) ........................................................................ 15

*United States v. Snype*,
    441 F.3d 119 (2d Cir. 2006) ............................................................ 23

*United States v. Stephenson*,
    2021 WL 4972601 (E.D.N.Y. Oct. 26, 2021) ....................................... *passim*

*United States v. Tussa*,
    816 F.2d 58 (2d Cir. 1987) ............................................................. 23

*United States v. Walker*,
    974 F.3d 193 (2d Cir. 2020) ................................................. 20, 24, 25

*United States v. Williams*,
    205 F.3d 23 (2d Cir. 2000) .......................................................... 21, 22

*United States v. Williams*,
    526 F. App'x 29 (2d Cir. 2013) .................................................... 21, 22

*United States v. Wong*,
    40 F.3d 1347 (2d Cir. 1994) ............................................................ 19

*United States v. Woodford*,
    2019 WL 5457854 (E.D.N.Y. Oct. 23, 2019) .............................. 18, 19, 26

*United States v. Yusufu*,
    63 F.3d 505 (7th Cir. 1995) ............................................................ 24

*Watkins v. Sowders*,
    449 U.S. 341 (1981) ................................................................... 28-29

*Watson v. City of N.Y.*,
    289 F. Supp. 3d 398 (E.D.N.Y. 2018) ............................................... 18

**Statutes**

18 U.S.C. § 924(c) ........................................................................... 8
18 U.S.C. § 1951 ............................................................................. 8

**Other**

Fed. R. Evid. 403 ............................................................. 20, 21, 22, 23
Fed. R. Evid. 404 .................................................................... 11, 21
Fed. R. Evid. 609 .................................................................... 11, 12
Fed. R. Evid. 701 ......................................................................... 20

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to defendant James Kelly's motions *in limine* ("Def. Br."). First, the defendant's request to preclude cross-examination about the defendant's prior 2013 conviction for criminal possession of a loaded firearm is premature. The Government currently anticipates impeaching the defendant with that conviction only if he testifies at trial in a manner inconsistent with the prior conviction. At that point, the defendant's credibility will be central, making the prior conviction's existence highly probative of the defendant's truthfulness and not unfairly prejudicial. Second, the defendant's identification by New York City Police Department ("NYPD") Officer Joseph Whelan was not unduly suggestive because it was a confirmatory identification from surveillance footage after Officer Whelan had already had a twenty-five minute, direct, in-person encounter with the defendant approximately one-and-a-half months earlier. Moreover, Officer Whelan's identification was clearly independently reliable.[1] Any potential prejudice caused by the identification is minimal, does not come close to outweighing the probative value of the identification, and can be eliminated through appropriate limiting instructions by the Court. Third, there is no basis to preclude any in-court identification of the defendant by Officer Whelan or by any other potential Government witness at trial at this juncture. Accordingly, all of the defendant's motions *in limine* should be denied.

---

[1] The defense has not requested a factual hearing relating to Officer Whelan's identification, nor is any such hearing warranted given that there are no disputed material facts. *See, e.g.*, *United States v. Noble*, No. 07 Cr. 284 (RJS), 2008 WL 140966, at *1 (S.D.N.Y. Jan. 11, 2008) ("A defendant is entitled to an evidentiary hearing on a motion to suppress only if the defendant establishes a contested issue of material fact."). If the moving papers do not create a genuine dispute as to any material fact, the court can decide the matter on the factual record established by the papers. *See United States v. Caming*, 968 F.2d 232, 236 (2d Cir. 1992); *United States v. Martinez*, 992 F. Supp. 2d 322, 325-26 (S.D.N.Y. 2014).

## FACTUAL BACKGROUND

Defendant James Kelly is charged with committing a Hobbs Act robbery of a deli store in the Bronx on January 15, 2023, in violation of 18 U.S.C. § 1951, and with brandishing a firearm in furtherance of that robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and (ii) (Dkt. 9).

As set forth in more detail in the Government's motions *in limine* (Dkt. 50 at 5–8), incorporated by reference herein, prior to the charged Hobbs Act robbery, the defendant was involved in prior incidents with two other deli stores within about a five-minute walking distance of the deli store he robbed on January 15, 2023.  Specifically, on December 5, 2022, the NYPD received a report that an individual had stolen money from a deli store in the Bronx, near the Bronx Zoo.  In connection with the December 5, 2022 incident, NYPD officer Joseph Whelan and others arrested the defendant later that day, while he was standing near the area outside of the deli store that had reported the incident.  As captured on the officers' body camera footage of the defendant's arrest and subsequent booking at the NYPD precinct, Officer Whelan directly interacted and communicated with the defendant over a period of approximately twenty-five minutes between the arrest and booking.  During this encounter, Officer Whelan was able to observe from multiple angles the defendant's unobscured face, his body type, his clothing and accessories, how he moved and carried himself, and how he walked.  The defendant was outspoken and appeared displeased during parts of the arrest and booking, but was also calm at other points, which allowed Officer Whelan to see and hear a range of emotional states of the defendant, along with the defendant's voice and manner of communicating.

On January 15, 2023, approximately one month after Kelly's December 5, 2022 arrest, he committed the gunpoint robbery charged in the instance case.  Specifically, the defendant robbed at gunpoint a deli store located diagonally across the street from the deli store that the defendant

targeted the prior month.  Officer Whelan was not involved in investigating the January 15, 2023 robbery, but other NYPD detectives and officers in his precinct were.  As part of the investigation, one of those NYPD detectives (the "Investigating Detective") obtained multiple surveillance videos of the robber and where he went immediately after the January 15, 2023 robbery.  Those videos showed that the robber openly carried a handgun inside the deli store to commit the January 15, 2023 robbery, with his face, head, and body entirely covered.  He then walked out of the store, crossed the street, and entered a gated area surrounding a residential apartment building located at 820 East 180th Street, which is less than 250 feet from the robbed deli store.  While wearing the same clothing from the January 15, 2023 robbery, the defendant entered a stairwell of that building, changed clothing, removed his face mask, and then walked up seven flights of stairs in that stairwell, before exiting on the seventh floor and using a key to enter apartment 7U.  During the period that the robber entered the gated area of the building and entered and exited the building's stairwell, no other individual entered or exited.  Although there is no security camera on the ground floor of the stairwell—and thus no images of the robber changing out of the robbery clothing— there are cameras on every subsequent floor that captured the robber walking up the seven flights of stairs, exiting the stairwell, and entering apartment 7U on the seventh floor.

After the Investigating Detective obtained and reviewed the surveillance videos of the robber in the immediate aftermath of the January 15, 2023 robbery, he shared them with some of his colleagues (but not Officer Whelan, who was in a different unit at the precinct), to see if they recognized the robber.  Multiple colleagues expressed that the videos appeared to depict the defendant, who was familiar to the precinct's officers.  The Investigating Detective looked up the defendant's history and other information in law enforcement databases and saw that Officer Whelan had arrested the defendant most recently, on December 5, 2022.

On or about January 25, 2023, the Investigating Detective called Officer Whelan to an office at the precinct and showed him videos of the robber, unmasked, walking in the stairwell of 820 East 180th Street (the "Stairwell Videos").  He did not show Officer Whelan the videos of the robbery itself.  Neither the Investigating Detective nor anyone else supplied to Officer Whelan any context for or reasons why the videos were being shown to him, nor did anyone provide any information about who was believed to be in the Stairwell Videos.  The Investigating Detective simply told Officer Whelan that he was going to show him a couple videos to see if he recognized a person or not.  After seeing one of the first few videos, Officer Whelan identified the person in the stairwell as "James Kelly."  Both Officer Whelan and the Investigating Detective separately reported in recent interviews with the Government that Officer Whelan seemed confident in the identification.  The Investigating Detective then created a still image of the approximate point of the video at which Officer Whelan made the identification, and Officer Whelan signed the still image.  After the identification, the Investigating Detective did not speak with Officer Whelan further about the case, the videos, or the individual identified.  Officer Whelan's only involvement in the investigation of the January 15, 2023 robbery was his identification from viewing the Stairwell Videos.[2]

## ARGUMENT

The defendant seeks to preclude three categories of evidence in his motions *in limine*, namely (1) cross-examination of the defendant relating to his 2013 conviction for criminal

---

[2] On November 22, 2023, the Government briefly interviewed Officer Whelan and the Investigating Detective separately by phone about the identification that occurred on January 25, 2023.  The Government produced its notes of these two calls to defense counsel that same day.

possession of a loaded firearm, (2) NYPD Officer Whelan's out-of-court identification of the defendant from the Stairwell Videos, and (3) any in-court identification of the defendant by Officer Whelan or any other witness presented by the Government.  For the reasons explained below, all three of those requests should be denied.

### I. The Court Should Permit the Government to Cross-Examine the Defendant About His Prior Felony Conviction if the Defendant Testifies in a Manner Inconsistent With His Prior Conviction

The defendant moves *in limine* under Rule 609 of the Federal Rules of Evidence to bar the Government from cross-examining him regarding his 2013 conviction for possession of a loaded firearm.  The Court should deny the defendant's request.

First, the defendant's motion is premature given that the Government has not moved to admit extrinsic evidence of the defendant's prior felony conviction to impeach his character for truthfulness in general under Rule 609.[3]  Federal Rule of Evidence 609 governs the "rules [that] apply to attacking a witness's character for truthfulness by evidence of a criminal conviction."  Fed R. Evid. 609.  For felony convictions that occurred within ten years of the defendant's trial, Rule 609(a)(1) provides that evidence of a criminal conviction "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant."  Fed R. Evid. 609(a)(1)(B).[4]  In determining whether "the probative value

_____

[3] By letter dated November 13, 2023, the Government notified defense counsel that the Government may introduce evidence of the defendant's prior 2013 felony conviction, citing Rules 609(a)(1) and 404(b) of the Federal Rules of Evidence.  The following week, the Government filed its motions *in limine*, which did not address or seek to admit the defendant's 2013 conviction.  As set forth herein, at present, the Government only intends to impeach the defendant with this prior conviction if he testifies at trial in a manner inconsistent with this prior conviction.

[4] While the defendant attempts to rely, in part, on advisory notes underlying Rule 609(b) of the Federal Rules of Evidence, the defendant properly concedes that Rule 609(b), which governs the admissibility of prior convictions that are greater than ten years old, "does not apply" here,

of [a prior conviction punishable by death or more than one year of imprisonment] outweighs its prejudicial effect to [the] defendant" under Rule 609(a)(1)(B), district courts are guided by several factors, including: (1) the impeachment value of the prior crime; (2) the date of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. *United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1977) (citations omitted).  The burden is on the Government to show that the probative value of a prior conviction outweighs its prejudicial effect. *Id.* at 828.  When evidence of a prior conviction is admitted, the presumption is that only the "essential facts" of the prior conviction—which include "the statutory name of each offense, the date of conviction, and the sentence imposed"—will be admitted for purposes of impeachment. *United States v. Estrada*, 430 F.3d 606, 615–16 (2d Cir. 2005).

The defendant's motion rests on a fundamental misapplication of Rule 609.  Rule 609 applies only where the government seeks "to impeach [the defendant's] character for truthfulness in general," and not—as applicable here—where the government only "intend[s] to introduce the conviction to contradict specific testimony offered by [the defendant]."  *United States v. Frazier*, No. S6 15 Cr. 153 (VSB), 2019 WL 761912, at *8 (S.D.N.Y. Feb. 21, 2019); *see also United States v. Lopez*, 979 F.2d 1024, 1033 (5th Cir. 1992) ("The fundamental problem with the application of . . . Rule 609 is that [the rule does not apply] in determining the admissibility of relevant evidence introduced to contradict a witness's testimony as to a material issue.").  Here, the defendant's motion is premature, given that the Government has made no such application under Rule 609. Therefore, the Court should deny the defendant's request.

---

where the defendant's sentence concluded in February of 2016, well within the Rule's ten-year period.  *See* Def. Br. at 2.

Second, and as the defendant concedes, Rule 609 does not function as a bar to the government's cross-examining the defendant if the defendant "should take the stand and affirmatively claim that he has never been in trouble with the law before . . ." Def. Br. at 3.  In the event the defendant testifies in a manner that contradicts the facts underlying his criminal conviction, the Government should be permitted to cross-examine the defendant using, among other things, the underlying facts of his prior felony conviction.  "A defendant has no right to avoid cross-examination into the truth of his direct examination, even as to matters not related to the merits of the charges against him."  *United States v. Payton*, 159 F.3d 49, 58 (2d Cir. 1998).  "Where a defendant testifies on direct about a specific fact, the prosecution is entitled to prove on cross-examination that he lied as to that fact."  *United States v. Beverly*, 5 F.3d 633, 639–40 (2d Cir. 1993) (where defendant testified that he had no familiarity with guns, he opened the door to impeachment by evidence of several prior incidents in which he allegedly possessed and used firearms); *see also United States v. Mesbahuddin*, No. 10 Cr. 726, 2011 WL 3841385, at *2 (E.D.N.Y. Aug. 26, 2011) (granting government's motion to cross-examine the defendant regarding the "underlying facts" of a prior conviction if the defendant "'open[ed] the door' by testifying 'in a manner that contradict[ed] his criminal history'") (internal citations omitted).

Therefore, given that the Government currently anticipates impeaching the defendant with the prior conviction only if he testifies at trial in a manner inconsistent with this prior conviction, the Court should deny the defendant's motion.

7

**II. There Is No Basis to Suppress Officer Whelan's Identification of the Defendant**

**A. Officer Whelan's Confirmatory Identification of the Defendant Is Reliable**

**1.  Applicable Law**

As a general matter, the Constitution "protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit." *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012).  Witness identifications should therefore be excluded only where "improper police conduct" occurred that was "so unnecessarily suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.* at 238; *see Manson v. Brathwaite*, 432 U.S. 98, 113 (1977); *Simmons v. United States*, 390 U.S. 377, 384−85 (1968).  Outside of those narrow circumstances, the "Draconian sanction" of exclusion may not be considered, and the reliability of the identification evidence is for the jury to weigh. *Perry*, 565 U.S. at 239.

Federal courts follow a two-pronged analysis in ruling on the admissibility of identification evidence. *Perry*, 565 U.S. at 238−40; *Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009).  First, the defendant must show that the identification was "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *United States v. DiTommaso*, 817 F.2d 201, 213 (2d Cir. 1987); *see Raheem v. Kelly*, 257 F.3d 122, 134 (2d Cir. 2001).  That is a high threshold to meet, as the defendant must show, under the totality of the circumstances, "a very substantial likelihood of irreparable misidentification." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990).  If the defendant cannot make such a showing, "the trial identification testimony is generally admissible without further inquiry into the reliability of the pretrial identification.  In that circumstance, any question as to the reliability of

8

the witness's identification goes to the weight of the evidence, not its admissibility." *Id.*
Moreover, under such circumstances, the court need not even reach the second step of the analysis.
*See*, *e.g.*, *Sims v. Sullivan*, 867 F.2d 142, 145 (2d Cir. 1989); *Jarrett v. Headley*, 802 F.2d 34, 42
(2d Cir. 1986) ("[I]f the procedures were not impermissibly suggestive, independent reliability is
not a constitutionally required condition of admissibility."). Indeed, where there is no "improper
police conduct" in the identification procedure, the Due Process Clause does not regulate
admissibility at all, and determinations concerning reliability must be left to the jury. *Perry*, 565
U.S. at 238−40.

Second, even an unduly suggestive identification procedure does not alone require
suppression of the identification evidence. *See Brathwaite*, 432 U.S. at 110−14. Instead, the court
must determine whether the identification evidence is nevertheless "independently reliable" based
on the totality of the circumstances. *Brisco*, 565 F.3d at 89; *United States v. Simmons*, 923 F.2d
934, 950 (2d Cir. 1991); *Brathwaite*, 432 U.S. at 114. Among the factors to be considered are:
"the opportunity of the witness to view the criminal at the time of the crime, the witness' degree
of attention, the accuracy of the witness' prior description of the criminal, the level of certainty
demonstrated by the witness at the confrontation, and the length of time between the crime and the
confrontation." *Neil v. Biggers*, 409 U.S. 188, 199−200 (1972). No single factor is dispositive.
*United States v. Concepcion*, 983 F.2d 369, 378 (2d Cir. 1992).

Even where, as here, the identification at issue is by a law enforcement officer and not by
an eyewitness to a crime, the reliability of the identification remains the linchpin, and courts in
this Circuit still assess whether the identification procedure was unduly suggestive and, if so,
whether the identification nevertheless was independently reliable. *See*, *e.g.*, *United States v.
Brown*, No. 20 Cr. 293 (WFK), 2022 WL 5189661, at *1−*2 (E.D.N.Y. Oct. 5, 2022) (involving

a police officer's identification from security videos); *United States v. Stephenson*, No. 20 Cr. 511 (AMD), 2021 WL 4972601, at *4 (E.D.N.Y. Oct. 26, 2021) (involving a parole officer's identification of the defendant from a surveillance still image).

### 2. Discussion

There is no basis to suppress Officer Whelan's identification of the defendant as the individual who committed the January 15, 2023 armed robbery of a deli store.  Thus, Officer Whelan should be permitted to testify about his prior identification and also make an in-court identification of the defendant. The identification procedure was not impermissibly suggestive because it was a confirmatory identification by Officer Whelan, who had had an extended, twenty-five minute in-person interaction with the defendant in the month preceding the robbery, on December 5, 2022.  Moreover, the identification had clear independent reliability based on the relevant factors.

On January 25, 2023, Officer Whelan viewed and identified the defendant from surveillance footage of the January 15, 2023 robber unmasked walking up the stairs of a residential building shortly after the robbery had occurred.  Prior to his review of the videos, no one told Officer Whelan how the videos were obtained, why he was reviewing the videos, or who was believed to be captured in the videos.  Nor did the videos reflect any indication of criminal conduct. Instead, Officer Whelan was simply asked to watch the videos to see if he recognized the person or not.  He was able to identify the defendant from the videos because in the preceding month, Officer Whelan had arrested the defendant and taken the defendant to the precinct, where he was booked.  Through that arrest and subsequent booking—which together lasted approximately twenty-five minutes—Officer Whelan interacted directly and extensively with the defendant.  As reflected in body camera footage of the December 5, 2022 arrest, Officer Whelan was able to see

the defendant's face unobscured, his facial expressions, his body, his build, and how he carried himself, walked, and moved.  Officer Whelan told the Government on a recent phone call that he was able to identify the defendant from the Stairwell Videos because of his prior, then-recent interaction with the defendant from the December 2022 arrest.  He further noted that his arrest of the defendant may have been the only arrest he had conducted for a period of months, which would have made the arrest all the more memorable for him.

Under these circumstances, Officer Whelan's identification is plainly a confirmatory identification and not the result of any improperly suggestive procedures.  Courts in this Circuit have routinely admitted such identifications.  *See, e.g.*, *United States v. Nieves*, No. 19 Cr. 354 (JSR), 2021 WL 1240472, at *3 (S.D.N.Y. Apr. 1, 2021) ("[C]ourts in this [C]ircuit have held that identification procedures consisting of the display of a single photograph to a witness who states that the witness already knows the perpetrator, in order to confirm the perpetrator's identity, are not unduly suggestive."); *United States v. Jimenez*, No. 20 Cr. 122 (LTS), 2020 WL 7231062, at *2 (S.D.N.Y. Dec. 8, 2020) (same); *Brown*, 2022 WL 5189661, at *2 (finding "no evidence to suggest the identification process was improperly suggestive" where an officer who had prior knowledge of the defendants subsequently identified the defendants from watching surveillance video and had not been provided with the defendants' names or details about the crimes before reviewing the videos); *Stephenson*, 2021 WL 4972601, at *2 (admitting a parole officer's identification of the defendant from a surveillance image because the identification was confirmatory and independently reliable given that the parole officer was previously familiar with the defendant); *United States v. Hardy*, No. 10 Cr. 1123 (JSR), 2011 WL 7782582 (S.D.N.Y. Jan.

25, 2011) ("Displaying a confirmatory photograph of a person the witness has indicated that he already knows is perfectly acceptable.").[5]

Because Officer Whelan's identification is not unduly or unnecessarily suggestive, the Court need not determine whether the identification had independent reliability, *see, e.g.*, *Nieves*, 2021 WL 1240472 at *3 n.5, *Jimenez*, 2020 WL 7231062, at *2, but assessment of the relevant factors demonstrates overwhelmingly that the identification was independently reliable, *see, e.g.*, *United States v. Woodford*, No. 18 Cr. 654 (KAM), 2019 WL 5457854, at *9 (E.D.N.Y. Oct. 23, 2019) ("[C]ourts have found witnesses sufficiently familiar with a suspect to render an independently reliable identification after a single minutes-long interaction, notable interactions, or conversations, and even after a year-long interval or longer." (collecting cases)).  During the December 5, 2022 arrest, Officer Whelan had a close, direct, and unobstructed view of the defendant, and Officer Whelan's attention was on the defendant, both as the arresting officer, and also because the defendant was not completely calm and cooperative throughout the arrest and subsequent booking process.  Both Officer Whelan and the Investigating Detective who showed the Stairwell Videos to Officer Whelan reported that Officer Whelan was confident in his identification, and only a short period of time—approximately one-and-a-half months—had passed between Officer Whelan's arrest of the defendant and his subsequent identification from

---

[5] *See also Gilbert v. Sup't of Collins Corr. Fac.*, No. 03 Civ. 3866 (LBS), 2004 WL 287683, at *8 (S.D.N.Y. Feb. 11, 2004); *Watson v. City of N.Y.*, 289 F. Supp. 3d 398, 408-09 (E.D.N.Y. 2018); *United States v. Ramos-Cruz*, No. 11 Cr. 151-A, 2014 WL 9931353, at *2 (W.D.N.Y. July 15, 2014); *Franco v. Lee*, No. 12 Civ. 1210 (SJF), 2013 WL 704655, at *10 (E.D.N.Y. Feb. 26, 2013); *United States v. Donald*, No. 07 Cr. 6208L, 2009 WL 960209, at *1 (W.D.N.Y. Apr. 7, 2009); *Stallings v. Wood*, No. 04 Civ. 4714 (RLM), 2006 WL 842380, *11 (E.D.N.Y. Mar. 27, 2006); *United States v. Harris*, No. 12 Cr. 65, 2018 WL 1517216, at *18 (D. Vt. Feb. 27, 2018).

the surveillance footage.[6] *See, e.g.*, *United States v. Wong*, 40 F.3d 1347, 1360 (2d Cir. 1994) (finding sufficient independent reliability where ten-month gap separated crime and identification and where witness had had clear opportunity to observe gunman for two or three seconds before ducking under table out of fear of being shot); *Stephenson*, 2021 WL 4972601, at *2 (admitting a parole officer's identification of the defendant from a surveillance image because the identification was confirmatory and independently reliable given that the parole officer was previously familiar with the defendant); *Brown*, 2022 WL 5189661, at *2 (finding that officers' "ample opportunity" to clearly view the defendants, and the fact that the officers paid attention to the defendants supported the independent reliability of the officers' identifications of the defendants from security video); *Woodford*, 2019 WL 5457854, at *10–*12 (explaining that on-duty officers who observe a crime knowing that they may later make a case against the perpetrator paid close attention to the perpetrator, and noting that a period of six weeks between an officer's observations of the defendant at a traffic stop and a subsequent identification was "not unreasonably long" and that both of those factors weighed in favor of independent reliability). Therefore, Officer Whelan's identification of the defendant was not the product of undue suggestiveness and cannot be excluded on that basis. Instead, he should be permitted both to testify about his prior identification and to provide an in-court identification of the defendant.

---

[6] In addition, the surveillance footage of the robber in the stairwell shows the robber ultimately leaving the stairwell to use a key to enter a specific apartment unit ███████████ ███████ (Def. Br. at 3 (redacted)). *See, e.g.*, *Woodford*, 2019 WL 5457854, at *11 ("The *Biggers* factors are not exclusive, and courts can consider other factors that bear on reliability.")

**B. Officer Whelan's Identification of the Defendant Is Highly Probative and Minimally Prejudicial**

Besides challenging the reliability of Officer Whelan's identification, the defendant also claims that the identification is unduly prejudicial and must be suppressed under Federal Rule of Evidence 403.  That argument fails as well.  As set forth in Section II of the Government's motions *in limine* (Dkt. 50 at 17–20), incorporated herein by reference, the Government seeks to admit only limited, neutral evidence of Officer Whelan's December 5, 2022 encounter with the defendant to provide context for how he knew the defendant and was therefore subsequently able to identify him from the Stairwell Videos, without disclosing the fact that the December encounter was in the context of an arrest for another incident involving a nearby deli store.  Because the identity of the perpetrator of the charged January 15, 2023 robbery is being disputed by the defense, *see* Def. Br. at 3 ("Identification is a contested issue in this case."), Officer Whelan's identification of the defendant is highly probative and not even close to being *substantially* outweighed by *unfair* prejudice, as required for exclusion under Rule 403.[7]

_____

[7] The defendant argues that the probative value of Officer Whelan's identification is low because the jury can view the stairwell footage themselves, Def. Br. at 5, but unlike the jury, who will primarily view the defendant only while he is seated at counsel table during trial, Officer Whelan was able to much more extensively observe how the defendant walked, moved, and carried himself, as well as see the defendant's face from multiple angles and with different facial expressions from his extended December 5, 2022 encounter with the defendant.  Furthermore, Officer Whelan's identification will be helpful to the jury because in the Stairwell Videos, the defendant generally does not look directly at the camera.  *See, e.g.*, *United States v. Walker*, 974 F.3d 193, 205-06 (2d Cir. 2020) (affirming admission of a probation officer's identification of the defendant from a video under Rule 701 where the video was not crystal clear, among other things); *United States v. Arroyo*, 600 F. App'x 11, 15 (2d Cir. 2015) (upholding the admission of identification testimony because it was "based on factors that the jury did not possess, namely [the witness'] familiarity with [the defendant's] manner of dress, gait, and demeanor").  In addition, Officer Whelan's identification is highly probative here because, at present, no other out-of-court identification of the defendant has been made in connection with the charged robbery.

The Second Circuit has repeatedly stated that evidence is not unduly prejudicial under Rule 403 when it is not "more inflammatory than the charged crime[s]." *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999); *United States v. Rahim*, 339 F. App'x 19, 23 (2d Cir. 2009) (introduction of 404(b) evidence not prejudicial because "the evidence was not more sensational than the evidence of the charged crime"); *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (introduction of 404(b) evidence not prejudicial where it "did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged"). Moreover, courts have regularly admitted 404(b) evidence where any potential prejudice could be addressed through a limiting court instruction. *See, e.g.*, *United States v. Williams*, 205 F.3d 23, 33–34 (2d Cir. 2000) (finding "no undue prejudice under Rule 403; the evidence did not involve conduct more serious than the charged crime and the district court gave a proper limiting instruction"); *see also United States v. Williams*, 526 F. App'x 29, 35 (2d Cir. 2013) (approving district court's admission of Rule 404(b) evidence and noting that "the court administered an appropriate limiting instruction, telling the jury that the evidence could only be considered with respect to the issue of knowledge or intent").

Here, the Government intends to introduce evidence of Officer Whelan's December 5, 2022 encounter with the defendant in a neutral and limited manner that elicits only the necessary factual foundation to establish why Officer Whelan knew the defendant and could identify the defendant from the Stairwell Videos.  In order to provide that context and to allow a jury to assess Officer Whelan's credibility and the reliability of his identification, the Government anticipates offering testimony that Officer Whelan had a sustained, close, direct, in-person interaction with the defendant that lasted approximately twenty-five minutes, during which the officer could clearly observe from different angles the defendant's face, head, facial expressions, clothing, build,

15

posture, body movements, and gait, and how the defendant carried himself.  The Government does not intend to elicit the fact that the interaction was in the context of an arrest nor any facts surrounding the underlying incident with the deli store on December 5, 2022 that led to the defendant's arrest.

Under these circumstances, there is minimal prejudice from introducing evidence of Officer Whelan's identification of the defendant, and any potential for prejudice can be eliminated through appropriate limiting instructions by the Court directing the jury not to consider the evidence for any impermissible purpose and not to speculate about the reasons for or nature of Officer Whelan's interaction with the defendant.  *See, e.g.*, *Williams*, 205 F.3d at 33–34 (affirming admission of the defendant's prior uncharged criminal conduct because it was relevant "to complete the story of the crimes charged," and finding "no undue prejudice under Rule 403" where "the evidence did not involve conduct more serious than the charged crime and the district court gave a proper limiting instruction"); *Williams*, 526 F. App'x at 35 (affirming admission of defendant's prior firearms conviction and finding "very little risk of unfair prejudice" in light of, among other things, the court's providing an appropriate limiting instruction); *United States v. Bermudez*, 529 F.3d 158, 161–63 (2d Cir. 2008) (affirming admission of officer's testimony that he overheard the defendant's drug-related comments because the officer's credibility and account of events "was at the heart of the case" and any unfair prejudice was minimized by the Court's detailed limiting instructions); *United States v. Graziano*, 558 F. Supp. 2d 304, 319–23 (E.D.N.Y. 2008) (admitting evidence of a series of interactions between the defendant and the victim in the years before the charged arson at issue because such evidence was "critical" for the jury's assessment of intent and motive, and any unfair prejudice could be addressed through a limiting instruction); *United States v. Tussa*, 816 F.2d 58, 68 (2d Cir. 1987) (limiting instruction sufficient

to eliminate prejudice to defendant); *see generally Parker v. Randolph*, 442 U.S. 62, 75 n.7 (1979) ("The 'rule'—indeed, the premise upon which the system of jury trials functions under the American judicial system—is that juries can be trusted to follow the trial court's instructions."); *United States v. Morales*, 505 F. App'x 30, 35–36 (2012); *United States v. Snype*, 441 F.3d 119, 129–30 (2d Cir. 2006).

Moreover, the fact of the defendant's prior encounter with Officer Whelan on December 5, 2022 is in no way more inflammatory or sensational than the defendant's charged crime of committing a gunpoint robbery. *See Livoti*, 196 F.3d at 326 (evidence not unduly prejudicial under Rule 403 when it is not "more inflammatory than the charged crime"); *Rahim*, 339 F. App'x at 23 (2d Cir. 2009) (evidence not prejudicial where it "was not more sensational than the evidence of the charged crime"); *Roldan-Zapata*, 916 F.2d at 804 (similar). The defendant seems to claim that the mere fact that he had an extended, prior in-person interaction with a law enforcement officer creates undue prejudice warranting suppression, *see* Def. Br. at 4–5, but that is not true. There are countless innocent contexts in which an individual could have an extended, in-person interaction with a law enforcement officer—for example, to report information as a victim or eyewitness to a crime. And, in any event, courts in this Circuit frequently admit far more prejudicial evidence of a defendant's prior *incarceration*—not just a prior interaction with a law enforcement officer— because otherwise admissible evidence does not become unfairly prejudicial merely because it concerns a prior interaction with law enforcement. *See, e.g.*, *United States v. Faison*, 393 F. App'x 754, 759 (2d Cir. 2010); *United States v. Mauro*, 80 F.3d 73, 76 (2d Cir. 1996); *United States v. Rosa*, 11 F.3d 315, 334 (2d Cir. 1993); *United States v. Yusufu*, 63 F.3d 505, 511–12 (7th Cir. 1995); *United States v. Johnson*, 469 F. Supp. 3d 193, 219–20 (S.D.N.Y. 2019). Thus, disclosing

the fact that the defendant had a prior extensive conversation with Officer Whelan—especially when combined with appropriate limiting instructions—is not prejudicial.

Furthermore, none of the case law cited by the defendant, *see* Def. Br. at 4–5, supports suppression of Officer Whelan's identification of the defendant here.  While those cases discussed the risks of undue prejudice caused by law enforcement identifications, most of them nevertheless affirmed the admission of the officer's identification, including *United States v. Walker*, 974 F.3d 193, 204–06 (2d Cir. 2020), the only case in this Circuit that the defendant cited to in his discussion on the prejudice point.  Indeed, several of the defendant's cases, including *Walker*, *support* the admission of Officer Whelan's identification by establishing that law enforcement identifications can be admitted where the testimony is highly probative, and the risks are appropriately managed by the district court.  *See, e.g.*, *Walker*, 974 F.3d at 206 (affirming admission of identification where "the probation officer's identification testimony was highly probative, [] the record does not appear to contain other adequate identification testimony" and the district court imposed limitations such as not identifying the probation officer as a probation officer to mitigate the risk of prejudice); *United States v. Henderson*, 68 F.3d 323, 326–27 (9th Cir. 1995) (affirming admission of police officer's identification of the defendant because the officer "had far more opportunity than the jury to perceive [the defendant] from a variety of angles and distances and under different lighting conditions" and was familiar with the defendant's "carriage and posture"); *United States v. Pierce*, 136 F.3d 770, 774 (11th Cir. 1998) (noting that "familiarity derived from a witness's close relationship to, or substantial and sustained contact with, the defendant weighs heavily in favor of admitting the witness's identification testimony").[8]

---

[8] Defendant cites two out-of-Circuit cases in which courts suppressed law enforcement identifications of a defendant.  But neither of these cases supports suppression here.  *United States*

Similarly, the defendant broadly claims that his ability to cross-examine Officer Whelan regarding the identification is hampered by the risk of potential prejudice from revealing the criminal nature of the December 5, 2022 encounter.  (Def. Br. at 4–5).  But that is a strategic decision for the defendant to make, not the basis for suppression.  *See Walker*, 974 U.S. at 205–06 (affirming admission of a parole officer's identification of defendant and suggesting that where the Government had not elicited evidence that the identification was by the defendant's parole officer, the defendant was free to cross-examine the parole officer about the nature of their relationship (and thereby reveal that the defendant had been on parole) but chose not to as a matter of strategy).  Moreover, courts in this District have repeatedly admitted law enforcement identifications of a defendant.  *See, e.g.*, *Brown*, 2022 WL 5189661, at *2; *Stephenson*, 2021 WL 4972601, at *2; *Woodford*, 2019 WL 5457854, at *7–*13.  Presumably, the defendants there had sufficient opportunity to vigorously cross-examine those identifying law enforcement officers.  So too here.

Thus, the admission of Officer Whelan's December 5, 2022 interaction with the defendant in a neutral, limited manner is not unduly prejudicial, especially where combined with an appropriate limiting instruction from the Court not to draw any improper inferences from the

---

*v. Calhoun*, 544 F.2d 291, 296 (6th Cir. 1976), appears to be an outlier that has been criticized by four other Circuit courts, *see United States v. Pace*, 10 F.3d 1106, 1114-15 (5th Cir. 1993) (rejecting *Calhoun* and collecting cases from the Fourth, Eighth, and Ninth Circuit Courts of Appeals that have similarly rejected *Calhoun*).  Moreover, the Second Circuit, in *Walker*, explicitly cited *Calhoun* in its prejudice discussion but ultimately did not follow *Calhoun* and instead affirmed the admission of the probation officer's identification of the defendant.  *Walker*, 974 F.3d at 205-06.  *United States v. LaPierre*, 998 F.2d 1460 (9th Cir. 1993) is also inapplicable here.  The *LaPierre* court found that the admission of an investigating police officer's identification of the defendant was reversible error, in part because that officer "not only did not know [the defendant] [but] he had never even seen him in person," *id.* at 1465, which stands in stark contrast to Officer Whelan's nearly half-hour long, sustained, in-person interaction with the defendant.

interaction or to speculate about its nature.  The Court should deny the defendant's request to preclude Officer Whelan's identification of the defendant.

### C. The Defendant Fails to Identify Any Basis to Preclude Any In-Court Identification of the Defendant by Any Other Government Witnesses

Finally, the defendant moves to preclude any other Government witnesses, including "any witness to the robbery," Def. Br. at 6, from identifying the defendant in court.  The defendant also argues that, to the extent any witness attempts to identify the defendant for the first time at trial— without any previous identification of the defendant prior to trial—the Court should take steps to limit the in-court identification.  The Court should deny both requests.

First, where a witness has previously identified the defendant outside of court, it is neither inherently unconstitutional nor improperly suggestive, as the defendant argues, to have the same witness identify the defendant in court.  The defendant has moved to preclude, and the Government has addressed above, Officer Whelan's identification of the defendant.  *See supra* at 8–20.  The Government reserves the right to call other witnesses who have previously identified the defendant, and to provide appropriate notice of those witnesses' testimony prior to trial— including, as relevant here, any employees of the multiple deli stores that the defendant robbed between 2021 and 2023.  To the extent the defendant takes issue with those witnesses' testimony, the circumstances under which those witnesses previously identified the defendant, or those witnesses' ability to identify the defendant in court, the defendant can move at that time to preclude their testimony.  To the extent the defendant seeks a preemptive ruling prohibiting any other witnesses from identifying the defendant in court unless compelled to participate in a pre-trial identification process dictated by the defendant, that request should be denied.  *See United States v. Anglin*, 169 F.3d 154, 161 (2d Cir. 1999) ("If [the defendant] means to invite us to depart from

that line of authority and declare a *per se* rule requiring identification by lineup whenever a suspect is in custody, we decline the invitation.").

The defendant's reliance on *United States v. Archibald* as grounds for prohibiting any other in-court identification of the defendant is equally misplaced.  In *Archibald*, the Second Circuit dealt not with an in-court identification preceded by a pre-trial identification, as relevant here, but of an in-court "show-up"—*i.e.*, a witness who identified the defendant for the first and only time at trial.  *United States v. Archibald*, 734 F.2d 938 (2d Cir. 1984), *modified and reh'g denied*, 756 F.2d 223 (2d Cir. 1984).  So-called "show-ups" can "frequently be 'so clearly suggestive as to be impermissible.'"  *Samuels v. Senkowski*, 77 F. App'x 69, 71 (2d Cir. 2003) (quoting *Archibald*, 734 F.2d at 942).  Nevertheless, "[e]ven an identification at trial under circumstances that are tantamount to a showup is 'not per se inadmissible, but rather depend[s] upon the 'totality of the circumstances.''"  *United States v. Matthews*, 20 F.3d 538, 547 (2d Cir. 1994) (alteration in original) (quoting *Archibald*, 734 F.2d at 942).  "Where no improper law enforcement activity is involved, . . . it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at post indictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt."  *Perry*, 565 U.S. at 232–33 ("We have not extended pretrial screening for reliability to cases in which the suggestive circumstances were not arranged by law enforcement officers. . . Our decisions, however, turn on the presence of state action . . .").  *Archibald* does not provide a basis for the defendant to seek a blanket ruling prohibiting any in-court identification of the defendant.  And, whether permissible or otherwise, the Government does not presently intend, as relevant here, to

offer any testimony that would amount to an in-court "show-up"—*i.e.*, testimony where a witness identifies the defendant for the first time at trial.  That request should therefore be denied.

Finally, the defendant appears to argue that, in the event the Court intends to permit any in-court identification of the defendant, the Government should be required to conduct a pre-trial line-up, and the Court should seat the defendant among "other Black males of similar physical description" prior to any in-court identification.  Def. Br. at 7.  That request should also be denied.  "The defendant has no constitutional right to a line-up, and the decision whether to grant one is a matter for the exercise of discretion by the trial court."  *Sims*, 867 F.2d at 145 (collecting cases).  Contrary to the defendant's assertion, *Archibald* does not require the Court to institute either procedure in the event of any in-court identification.  Instead, *Archibald* is limited to an in-court identification of the defendant that is both not preceded by an out-of-court identification, and which is otherwise "so unreliable that a very substantial likelihood of irreparable misidentification exists."  *Sims* at 145 (internal citations and quotations omitted) (collecting cases).  However, "[s]hort of that point, such evidence is for the jury to weigh."  *Brathwaite*, 432 U.S. at 116; *see also Watkins v. Sowders*, 449 U.S. 341, 348 (1981) ("While identification testimony is significant evidence, such testimony is still only evidence . . .") (quoting *Brathwaite* at 114 n.14).  The defendant's assertions to the contrary are without merit and should be rejected.

**CONCLUSION**

For the reasons set forth above, the defendant's motions *in limine* should be denied.

Dated:  New York, New York
        November 27, 2023

                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney for the
                                        Southern District of New York


                            By:   /s/_____
                                        Katherine Cheng
                                        Georgia V. Kostopoulos
                                        David R. Felton
                                        Assistant United States Attorneys
                                        Tel.: 212-637-2492 / -2212 / -2299

23