UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                             :
   UNITED STATES OF AMERICA                  :
                                             :
              - v. -                         :
                                             :        23 Cr. 113 (GHW)
   JAMES KELLY,                              :
                                             :
                    Defendant.               :
                                             .
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
```

## DEFENDANT JAMES KELLY'S REPLY
## IN FURTHER SUPPORT OF HIS MOTIONS *IN LIMINE*

Michael D. Bradley, Esq.
BRADLEY LAW FIRM PC
2 Park Avenue, 20th Floor
New York, New York 10016
(212) 235-2089

TO:   Damian K. Williams, Esq.
      United States Attorney
      Southern District of New York

Attn: Katherine Cheng
      Georgia Kostopoulos
      David Felton
      Assistant United States Attorneys

**ARGUMENT**

I.    **Officer Whelan's In-Court Identification Should be Precluded Because the Out-of-Court Identification Procedure Was Unduly Suggestive and Allowing Such Evidence Would Usurp the Jury's Function At Trial.**

The government seeks to introduce evidence of Officer Whelan's identification of Mr. Kelly as the person in the stairwell of his own apartment building in January of 2023. For the reasons set forth below and as stated in the defense motion *in limine* (ECF No. 46, "Def. Mot. in Lim.") and opposition to the government's motions *in limine* (ECF No. 57, "Def. Opp."), such evidence if admitted to the jury would be unduly prejudicial to Mr. Kelly.

Officer Whelan, who stopped and then arrested Mr. Kelly in early December 2022, should not be permitted to offer an in-court identification of Mr. Kelly as the person seen on security camera video from January 15, 2023. The Due Process Clause protects accused individuals from unreliable identifications resulting from impermissibly suggestive procedures. *Manson v. Braithwaite*, 432 U.S. 98, 113, 116 (1977). Identification procedures where police show a witness a single suspect are typically and inherently unduly suggestive. *See United States v. Nieves*, No. 19 Cr. 354 (JSR), 2021 WL 1240472, at *4 (finding identification from a single photographic display non-confirmatory and unduly suggestive); *United States v. Turner*, No. 18 Cr. 68 (ALC), 2023 WL 1364888, at *8 (S.D.N.Y. Jan. 31, 2023) (finding a witness identification from surveillance video of a single individual to be a "suggestive show up identification procedure"), quoting *Brisco v. Ercole*, 565 F.3d 80, 89 (2d Cir. 2009) ("a 'show up' procedure is inherently suggestive because it involves the presentation of a single suspect to a witness by the police ..."). The Second Circuit has " 'consistently condemned the exhibition of a single photograph as a suggestive practice, and where no extenuating circumstances justify the procedure, as an unnecessarily suggestive one.' " *Id.*, citing *Wiggins v. Greiner*, 132 F. App'x 861, 865 (2d Cir. 2005) (quoting *Mysholowsky v. People*, 535 F.2d 194, 197 (2d Cir.1976)).

For the same reasons, Officer Whelan's identification of Mr. Kelly as the person in the stairwell on the day of this charged robbery should be precluded as unduly suggestive. The facts as recited by the government support this argument.

According to the government, when 48th Precinct suspects are depicted on video, investigating officers in the precinct "typically … ask around the precinct" to see whether they are known to any of the officers. *See* Def. Opp. at 6. Thus, it is clear that officers in the precinct are aware of this practice and know that one of their colleagues may ask them to participate in identification procedures to increase the rate of arrest in their precinct.

Here, on January 25, 2023, true to practice, Detective Pedro Silverio showed the stairwell videos to several of his co-workers, and, allegedly, "more than one said it looked like James Kelly." Detective Silverio then looked up Mr. Kelly's information in the NYPD system and learned that Officer Whelan had previously arrested Mr. Kelly. Detective Silverio called Officer Whelan to his office and informed him that he was going to show him some videos to see if he recognized someone he had previously arrested. As the government concedes – that was Mr. Kelly. Purportedly, Officer Whelan was not informed why Det. Silverio was showing him the videos, had

not heard the chatter in the Precinct that it was Mr. Kelly on the videos, and was wholly unaware of suggestive identification procedures routinely being implemented in the precinct. There is only one person depicted in the stairwell videos, and Officer Whelan identified that person as Mr. Kelly. Evidently, there is no record of how long Officer Whelan watched the videos, how many videos he was shown, and for how long he viewed them. Nor is there any indication whether he paused or rewound the videos. Because of the highly suggestive manner in which this identification was made, any in-court identification of Mr. Kelly by Officer Whelan is tainted and should not be admitted at a trial where the only issue before the jury is one of identification.

The government attempts to sanitize this unduly suggestive identification procedure by characterizing it as "confirmatory." *See* government's opposition to defense motions *in limine* (ECF No. 58, "Govt Opp.") at 10 – 12.   But it was not. An identification is confirmatory where the witness has previously indicated to law enforcement that he knows the perpetrator. *See e.g. United States v. Jimenez*, No. 20 CR 122-LTS, 2020 WL 7231062, at *2 (S.D.N.Y. Dec. 8, 2020). But the precise opposite is the case here: Officer Whelan did not previously indicate to the investigating detective that he knew the person in the stairwell; in fact, the detective showed Officer Whelan the videos to determine *whether* he would be able to identify the person depicted therein.  *Cf. United States v. Nieves*, No. 19 Cr. 354 (JSR), 2021 WL 1240472, at *4 (finding identification from a single photographic display unduly suggestive because it occurred before the witness indicated that he could recognize the suspect). Because of the unduly suggestive nature of the January 25, 2023, identification procedure, no in-court identification by Officer Whelan should be permitted.

## II.     Admitting Evidence Officer Whelan's In-Court Identification Would Cause Unfair Prejudice Which Substantially Outweighs Its Probative Value.

As the defense set forth in its motion *in limine* to preclude Officer Whelan from identifying Mr. Kelly at trial (ECF No. 46), Officer Whelan's identification of Mr. Kelly as the person in the stairwell of his own apartment building offers no additional probative evidence to the jury while carrying the risk of great prejudice.  It also raises serious Confrontation Clause issues.

The government argues that the in-court identification should be admitted because "it is nevertheless 'independently reliable' based on the totality of the circumstances." Govt Opp. at 9. However, if the identification is admitted at trial, Mr. Kelly would be forced to choose between two evils: allow the identification into evidence unchallenged or cross-examine the officer as to the circumstances of his arrest as well as the identification procedure itself.

For example, were Mr. Kelly to elicit that Officer Whelan had arrested him for a crime with which he was never charged, the government will no doubt argue that the defense has opened the door to evidence concerning the December 2022 robbery.  If Mr. Kelly forgoes cross-examining the Officer on the circumstances of their meeting, the jury will be left with the impression that Mr. Kelly is particularly memorable in a negative way, and Mr. Kelly will be unable to challenge the Officer's credibility. *See* Def. Opp. at 6.

Regarding the identification procedure, the same questions raised in the defense opposition remain: to how many officers did Det. Silverio show the videos? Did he show them individually to each officer, or did he circulate the videos for officers to watch at their leisure? Did anyone view them outside his presence? How many said they didn't know who was depicted in the videos, though Mr. Kelly was supposedly "known to the precinct?" Did any of them indicate that the suspect didn't look like James Kelly? Or that the suspect resembled someone else? Did officers discuss the videos amongst themselves? Did Det. Silverio continue showing the videos to officers until he found one that, in his opinion, "seemed confident" that Mr. Kelly was indeed depicted therein? Were the previous officers who mentioned Mr. Kelly by name not confident enough? Did Det. Silverio show the videos to the arresting officer for the October 10, 2021 robbery, or to any other arresting officers before or after showing them to Officer Whelan? Why or why not? *See* Def. Op. at 6.

Obviously, the significant cross-examination essential to questioning this identification would dangerously imperil Mr. Kelly's fair trial right because it will reveal that Mr. Kelly has frequently been arrested by officers of this Precinct in the past, including arrests for robberies. That harm too, cannot be cured by a limiting or curative instruction.

Additionally, the stairwell videos provide clear and unobstructed views of the person's face: the jury can view the video and view Mr. Kelly and decide whether it is he or not. Indeed, the jury will have observed Mr. Kelly for the duration of the trial and be provided access to the stairwell videos during their deliberations. After only having observed Mr. Kelly on a single occasion, several weeks prior to viewing the stairwell videos, Officer Whelan is not uniquely situated to do so. Conversely, even in the sanitized form the government seeks to offer, that Officer Whelan spent 25 minutes with Mr. Kelly on an evening in December 2022, the jury inevitably will speculate as to why, and Mr. Kelly will be hamstrung in his cross-examination. No curative or limiting instruction will solve the constitutional error.

Finally, Officer Whelan taking the stand and describing his 25-minute encounter with Mr. Kelly close in location to where the charged robbery took place will assume a disproportional importance to the jury as testimony of law enforcement. *United States v. Walker,* 974 F.3d 193, 205 (2d Cir. 2020) (quoting *United States v. Pierce*, 136 F.3d 770, 776 (11th Cir. 1998). Courts have acknowledged the high risk of unfair prejudice to the defendant when identification testimony comes from a law enforcement or corrections officer. *See Pierce*, 136 F.3d 770; *United States v. Henderson*, 68 F.3d 323, 327 (9th Cir.1995); *United States v. Calhoun*, 544 F.2d 291, 296 (6th Cir. 1976). After all, the question of identification falls squarely within the province of the jury, of course – and no juror should substitute a police officer's opinion on that subject over his or her own judgment.

**Conclusion**

For the reasons set forth above, and in his accompanying filings, Mr. Kelly respectfully submits that the Court should preclude Officer Whelan's in-court identification of Mr. Kelly.

Dated: December 1, 2023
      New York, New York

Respectfully Submitted,

Michael D. Bradley, Esq.
BRADLEY LAW FIRM PC
Attorney for Defendant
James Kelly
2 Park Avenue Floor 20
New York, New York 10016