UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | 23-CR-113 (DEH) |
| JAMES KELLY, | **ORDER** |
| Defendant. | |

DALE E. HO, United States District Judge:

On March 1, 2023, an indictment was filed charging Defendant James Kelly ("Kelly") with (1) Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a), and (2) Using, Carrying, and Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c).  The charges arise from a robbery that took place on January 15, 2023 (the "January 2023 robbery").

Before the Court are the parties' motions in limine.  Together, the motions concern: (1) testimony concerning Kelly's prior conviction for criminal possession of a weapon in 2013 (the "2013 conviction"); (2) evidence of a prior robbery purportedly committed by Kelly in October 2021 (the "October 2021 robbery"); (3) any in-court identification of Kelly by a witness to the January 2023 robbery; and (4) identification testimony by a New York City Police Department Officer Joseph Whelan ("Whelan"), based on a still image from security video camera footage.

On January 4, 2024, a superseding indictment was filed, adding an additional Hobbs Act Robbery charge related to the October 2021 robbery.

On January 8, 2024, a hearing was held on the motions in limine.  For the reasons explained at the hearing and in more detail below, the Defendant's motions are DENIED, and the Government's motions are GRANTED IN PART and DENIED IN PART as follows:

1. Defendant's motion to exclude testimony concerning his 2013 conviction is DENIED, without prejudice to renewal;

2.  The Government's motion to permit the introduction of evidence of the October 2021 robbery is DENIED as moot;

3.  Defendant's motion to preclude the Government from soliciting an in-court identification by any witness other than Officer Whelan is DENIED, without prejudice to renewal; and

4.  Defendant's motion to exclude Officer Whelan's identification is DENIED, and the Government's motion to permit the introduction of such evidence is GRANTED, subject to certain limitations described below.

**DISCUSSION**

**A. The 2013 Conviction**

The Court agrees that Kelly has an exceedingly strong argument for excluding evidence of his 2013 conviction.  *Cf.* Rule 609(b)[1] Advisory Committee's Note to 1974 Enactment ("[C]onvictions over ten years old generally do not have much probative value . . . [and] will be admitted very rarely and only in exceptional circumstances.").

The Court, however, need not rule on this issue.  In its opposition to the Defendant's motions, the Government represents that it does not, at this time, intend to introduce evidence related to Kelly's 2013 conviction affirmatively, but reserves the right to cross-examine him regarding it should he choose to testify, and only if he testifies in a manner inconsistent with that conviction.  *See* Government's Memorandum of Law in Opposition to Defendant's Motions In Limine ("Gov't Opp."), ECF No. 58, at 5.  The Government reaffirmed this representation at the motions hearing.

The Defendant's motion to preclude evidence of the 2013 conviction is therefore denied without prejudice to renewal, should the Government ultimately seek to cross-examine him as to the 2013 conviction or otherwise admit evidence of it.

---

[1] All references to Rules are to the Federal Rules of Evidence.

**B.  The October 2021 Robbery**

Rule 404(b) generally prohibits prior bad act evidence to show propensity or character, but allows it "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  There is at least one decision in this District in a similar Hobbs Act Robbery case excluding evidence of a prior robbery when offered for purposes similar to those for which the Government initially sought to introduce evidence of the October 2021 robbery.  *See United States v. Rosario*, No. 09 Cr. 415-2 (VEC), 2014 WL 5870708 (S.D.N.Y. Nov. 13, 2014) (excluding evidence of a prior uncharged robbery).[2]  The Court, however, need not rule on this issue.  At the motions hearing, the Government agreed that, in light of the January 4, 2024 superseding indictment, its motion to admit evidence of the October 2021 robbery under Rule 404(b) is now moot.  Pursuant to the superseding indictment, evidence concerning the October 2021 robbery is no longer evidence of an "other crime" (which is not admissible to prove a person's character but may admitted for other purposes under some circumstances), because it is direct evidence of a charged offense. The Government's motion as to the October 2021 robbery is therefore denied as moot.

**C.  In-Court Identification by any Witnesses to the January 2023 Robbery**

In its Opposition to the Defendant's motions and at the January 8, 2024, hearing, the Government represented that it does not, at this time, seek to have any eyewitness to the January 2023 robbery identify the Defendant in court.  *See* ECF No. 58, at 20.  To the extent that the Defendant's motion is made more broadly, seeking the preclusion of any identification testimony

---

[2] *But see United States v. Carlton*, 534 F.3d 97, 101 (2d Cir. 2008) (affirming admission of three prior bank robbery convictions); *United States v. Kornegay*, 641 F. App'x 79, 84 (2d Cir. 2016) (affirming admission of seven prior robberies); *United States v. Speed*, 272 F. App'x 88, 91-92 (2d Cir. 2008) (affirming admission of prior robbery conviction).

by a witness who has made no prior identification of the Defendant, *see* Defendant James Kelly's Motions In Limine, ECF No. 46, at 6, such a motion is denied as premature.  There is no categorical rule against identification testimony by a witness who has not previously identified a defendant.  *See United States v. Brown*, 699 F.2d 585, 593-94 (2d Cir. 1983) ("[A]n in-court identification without a prior line-up or hearing [does not] necessarily violate a defendant's rights."); *accord Hankins v. Smith*, No. 03 Civ. 5404 (WHP), 2008 WL 4601000, at *3 (S.D.N.Y. Oct. 15, 2008) (same).  Whether or not a particular identification procedure is unduly suggestive is a fact-based inquiry that "depend[s] upon the 'totality of the circumstances.'" *United States v. Matthews*, 20 F.3d 538, 547 (2d Cir. 1994), *abrogated in part on other grounds as recognized by United States v. Speed*, 636 F. App'x 9, 12-13 (2d Cir. 2015).

Accordingly, any arguments as to the admissibility of any in-court identification (other than by Officer Whelan, whose proposed testimony is addressed below), can be considered if the Government ultimately seeks to elicit such testimony, based on the particular circumstances of such testimony and the proposed identification procedure.  The Defendant's motion to preclude in-court identification testimony by any witnesses who have previously not identified the Defendant is therefore denied without prejudice to renewal.

### D. Officer Whelan's Identification Testimony

The Government seeks to admit, and the Defendant seeks to preclude, Officer Whelan's identification testimony based on a still image from video surveillance footage.  As described in the Government's motions in limine, *see* ECF No. 50, at 6-8, Whelan interacted with, and ultimately identified, the Defendant as follows:

After a different (and uncharged) robbery on Monday, December 5, 2022, Whelan and other officers arrested Kelly, and accompanied him to their precinct, spending approximately

twenty-five minutes with him.  Approximately one month later, in January 2023, the robbery underlying the original indictment in this case took place.  Later that day, a person (whom the Government asserts is Kelly) entered a stairwell of a nearby residential building wearing the same clothing as the person who committed the robbery and changed clothes, but continued to wear the same sneakers from the robbery.  This person was recorded in the stairwell by the building's surveillance cameras (but his purported act of changing clothes was not captured on video—the Government asserts that this took place on the ground floor of the stairwell, where there are no video cameras).  Whelan was shown a still image of this person captured from the surveillance footage of the stairwell, and, according to the Government, "positively identified him" as Kelly, whom Whelan purportedly recognized from his arrest the previous month. *Id.* at 8.

Whelan's testimony is offered as lay opinion testimony, which Rule 701 permits where such testimony is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  *See also United States v. Yannotti*, 541 F.3d 112, 125 (2d Cir. 2008) ("A rational perception is one involving first-hand knowledge or observation."  (internal quotation marks omitted)).

Subject to the limitations described below, the Court will permit Whelan's identification testimony.  There is no real dispute that Whelan's testimony qualifies as lay opinion under Rule 701.  And the most directly on-point case within this Circuit identified by the Court is the Second Circuit's opinion in *United States v. Walker*, 974 F.3d 193 (2d Cir. 2020), finding no error in a district court's admission of similar identification testimony by a probation officer.  There, the Second Circuit held that it was not an abuse of discretion for a district court to permit a

defendant's probation officer to testify that the defendant was the person whose image appeared in surveillance video footage of a robbery, and to permit an in-person identification by the probation officer. *See id.* at 204-06.

Kelly raises arguments under the Due Process Clause and Rule 403 against the admission of Whelan's identification testimony. They are considered in turn below.

### 1.    Due Process

Kelly first contends that admission of Whelan's identification testimony would violate Due Process because the identification procedure was unduly suggestive. The legal standard for the admission of identification testimony is as follows:

> To determine the reliability and admissibility of identification testimony, courts undertake a two-part inquiry. First, the court determines whether the identification procedure unduly and unnecessarily suggested that the defendant was the perpetrator. If the identification procedure was unduly and unnecessarily suggestive, the court determines "whether the identification was nonetheless independently reliable." Thus, identification evidence is admissible where (1) the identification procedures are not suggestive, or (2) the identification is independently reliable.

*United States v. Jimenez*, No. 20 Cr. 122 (LTS), 2020 WL 7231062, at *1 (S.D.N.Y. Dec. 8, 2020) (citations omitted) (quoting *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001)). Thus, if identification procedures are not unduly suggestive, "any question as to the reliability of the witness's identification[] goes to the weight of the evidence, not its admissibility." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973-74 (2d Cir. 1990).

"[A]n identification procedure may be deemed unduly and unnecessarily suggestive if it is based on police procedures that create 'a very substantial likelihood of irreparable misidentification.'" *Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). In this case, the Defendant contends that where, as was the case here, a witness is shown images of a "single suspect, [it is] typically and inherently unduly

suggestive." Defendant James Kelly's Reply In Further Support of His Motions In Limine ("Def.'s Reply"), ECF No. 60 at 2-3.

The Government responds by arguing that Whelan's identification was merely "confirmatory," and thus not unduly suggestive. *See* Gov't Opp., at 8-9. The Court agrees. Courts have found identification procedures where an eyewitness to a crime is shown a single suspect (i.e., the defendant) and asked if that suspect was the perpetrator to be unduly suggestive. *See, e.g.*, *United States v. Nieves*, No. 19 Cr. 354 (JSR), 2021 WL 1240472, at *4 (S.D.N.Y. Apr. 1, 2021); *United States v. Turner*, No. 18 Cr. 68 (ALC), 2023 WL 1364888, at *8 (S.D.N.Y. Jan. 31, 2023). But that is not what happened here. Rather, Whelan—who was not a witness to the underlying robbery—was shown the image from the video surveillance footage and—without being told that Kelly was being investigated—was asked to confirm if he recognized that person. He said he did, and then identified the person as Kelly—again, with no suggestion that Kelly was the subject of the investigation. That is, Whelan simply confirmed that he knew the person in the still image from the video, and made a positive identification of that person as Kelly.

Kelly contends this was not a "confirmatory" identification because Whelan was not an eyewitness to the underlying crime. *See* Def.'s Reply, at 2. It is true that most cases discussing confirmatory identifications are in situations where the testimony is given by an eyewitness to the crime who states that they know the defendant, and then confirms that the image shown is in fact the defendant. *See, e.g.*, *Jimenez*, 2020 WL 7231062, at *2 ("[C]ourts in this circuit have held that identification procedures consisting of the display of a single photograph to a witness who states that the witness already knows the perpetrator, in order to confirm the perpetrator's identity, are not unduly suggestive."). But that does not mean that a confirmatory identification is limited only to the eyewitness context. Rather, courts have held that identification procedures

like the one in this case, where an officer is asked whether they recognize a person depicted in video footage as someone with whom they were previously familiar, are confirmatory in nature and thus not unduly suggestive.  *See, e.g.*, *United States v. Brown*, No. 20 Cr. 293 (WFK), 2022 WL 5189661, at *2 (E.D.N.Y. Oct. 5, 2022); *United States v. Stephenson*, No. 20 Cr. 511 (AMD), 2021 WL 4972601, at *4 (E.D.N.Y. Oct. 26, 2021).  The identification procedure here was, therefore, not unduly suggestive.

But even if the Court agreed with the Defendant on this point, it would still find Whelan's testimony admissible under the second step of the requisite inquiry, because it is "independently reliable."  *United States v. Maldonado-Rivera*, 922 F.2d 934, 973-74 (2d Cir. 1990).  The Court reaches this conclusion by applying the five factors for assessing the reliability of identification testimony as set forth by the Supreme Court in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972) (the "*Biggers* factors").  Those factors are:

> (1) "the opportunity of the witness to view the criminal at the time of the crime,"
>
> (2)  "the witness' degree of attention,"
>
> (3) "the accuracy of the witness' prior description of the criminal,"
>
> (4)  "the level of certainty demonstrated by the witness at the confrontation, and"
>
> (5)  "the length of time between the crime and the confrontation."

*Id.*  "None of these factors standing alone is dispositive of the existence of independent reliability; instead, reliability is assessed in light of the totality of the circumstances."  *Brisco*, 565 F.3d at 89.

Here, the Government argues that the *Biggers* factors apply as follows:

> (1) Officer Whelan arrested and booked defendant on December 5, 2022, which "together lasted approximately twenty-five minutes, [during which] Officer Whelan interacted directly and extensively with the defendant."  Gov't Opp., at 10.

(2) "During the December 5, 2022[,] arrest, Officer Whelan had a close, direct, and unobstructed view of the defendant, and Officer Whelan's attention was on the defendant." *Id.* at 12.

(3) The Government does not address this factor because Officer Whelan is not an eyewitness, so this does not apply.

(4) "Both Officer Whelan and the Investigating Detective who showed the Stairwell Videos to Officer Whelan reported that Officer Whelan was confident in his identification." *Id.*

(5) "[O]nly a short period of time—approximately one-and-a-half months—had passed between Officer Whelan's arrest of the defendant and his subsequent identification of the surveillance footage." *Id.* at 12-13.

The Defendant does not meaningfully dispute these points, and the Court agrees with the Government's application of the *Biggers* factors. Here, the first, second, fourth, and fifth *Biggers* factors weigh in favor of reliability; only the third *Biggers* factor does not. Where, as here, only one factor weighs against reliability, courts have found an identification reliable. *See, e.g.*, *United States v. Brown*, No. 20 Cr. 293 (WFK), 2022 WL 5189661, at *2 (E.D.N.Y. Oct. 5, 2022) (finding officer identification independently reliable despite a three-year period between interaction with defendant and video surveillance identification). The Court, therefore, finds based on the totality of the circumstances, that Whelan's identification is independently reliable.

### 2.      Rule 403

Next, Kelly argues that the unfair prejudicial effect of Whelan's identification testimony substantially outweighs its probative value, meriting exclusion under Rule 403. That rule provides, in relevant part, that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . or needlessly presenting cumulative evidence." Kelly raises various points as to the purportedly limited probative value of Whelan's testimony and its potential for prejudice, but the Second Circuit considered and

rejected essentially the same arguments in *Walker*.

First, Kelly argues that Whelan's testimony has limited probative value because the jury can simply view the stills from the video footage evidence and decide for themselves whether they believe the images are, in fact, of Kelly. "Where the jury is 'in as good a position as the witness to draw the inference' to which the opinion relates, the opinion is not helpful and should not be admitted." *Walker*, 974 F.3d at 205 (quoting *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992)). But the defendant in *Walker* similarly argued that "the jury was capable of making the identification itself," *id.* at 204, and the Second Circuit rejected that argument, holding that the probation officer's identification testimony was "highly probative" due to the officer's past interaction with the defendant, particularly given that the record did "not appear to contain other adequate identification testimony" *id.* at 206. The record is similarly devoid of other identification testimony here. *Cf. United States v. Scott,* No. 21 Cr. 429 (AT), 2022 WL 1026725 (S.D.N.Y. Apr. 5, 2022) (admitting arresting officer's identification of the defendant in a surveillance video because its probative value was not outweighed by a danger of unfair prejudice).

Kelly also argues that identification testimony from a police officer would be prejudicial for various reasons, including the implied authority of the officer and the fact that the jury would be alerted to a previous interaction between him and law enforcement. The defendant in *Walker* raised similar points as to the "high risk of unfair prejudice" from the probation officer's identification testimony in that case. 974 F.3d at 205. But the Second Circuit rejected that argument, holding that it is "within a district court's discretion to manage that risk," placing "great weight on the District Court's instruction to counsel here that Walker's probation officer not be identified as a probation officer (*i.e.*, her profession was not to be mentioned)," and on the

fact that the government did not "elicit any testimony about Walker's criminal history in connection with the probation officer's testimony." *Id.* at 206.

Here, the Court will impose the same limitations (consented to by the Government at the motions hearing), requiring that Whelan's profession not be mentioned (other than that he works for a governmental agency), and that the Government not elicit testimony that Whelan arrested Kelly.  Kelly objects that, even with these limitations, he will face Confrontation Clause issues, because he will be unable to cross-examine Whelan without raising the fact of his arrest and/or Whelan's occupation.  But that is not true for at least some category of topics that could be the basis for cross-examination.  For example, at the motions hearing, defense counsel mentioned topics such as the length of time that Whelan viewed the images in question, and whether he saw video footage that was rewound and/or replayed.  Defense counsel can cross-examine Whelan on those topics (or question the nature and circumstances of Whelan's visual impressions) without raising the fact of Kelly's arrest or the nature of Whelan's occupation.  As for other potential topics of cross-examination that would implicate these issues, there may be some risk of prejudice—but that was also true in *Walker*, where the Second Circuit observed that the defendant "was free to cross-examine his probation officer about the nature of their relationship (to attempt to show, for example, that she was biased against him, or for any other reason), but chose not to do so." *Id.*

There are, however, several reasons why the identification testimony here is arguably not as probative as the testimony in *Walker*.  There, the probation officer knew the defendant over a longer period of time and had spent "many hours" with him, and thus was quite familiar with him.  *Id.* at 205.  Here, Whelan had only a single twenty-five-minute interaction with the Defendant.  Moreover, defense counsel argued at the motions hearing that the video footage in

*Walker* was of the robbery itself, whereas here it is from a nearby residential building and took place subsequent to the robbery, such that the Government must establish that the person in the footage is in fact the perpetrator of the robbery at issue.  But that simply states the Government's burden in laying the foundation for the identification testimony at trial.  Ultimately, these differences suggest that this case presents a closer call than *Walker*, but not that the outcome of the evidentiary objection should be different.  Notably, Kelly is unable to identify a single case from within this Circuit excluding similar identification testimony made by a law enforcement officer from video footage.[3]  Given the absence of such authority, and the Second Circuit's pronouncements as to the probative value of similar testimony in *Walker*, the Court will not exclude Whelan's testimony on the basis of these differences.  Any issues regarding the comparatively shorter length of time of Whelan's past interactions with the Defendant (and what effect, if any, that might have on the extent of Whelan's familiarity with him) go to the weight of Whelan's testimony rather than its admissibility as a threshold matter.  And the Government will have to satisfy its burden of laying a proper foundation for Whelan's identification testimony by connecting the events in the surveillance video to the January 2023 robbery.

## CONCLUSION

For the reasons stated above: (1) the Defendant's motion to exclude testimony concerning

---

[3] *But see United States v. Calhoun*, 544 F.2d 291, 294-95 (6th Cir. 1976) (holding that trial court abused its discretion by allowing the defendant's parole officer to testify as a lay witness, for the purposes of identifying the defendant in a photograph); *United States v. LaPierre*, 998 F.2d 1460, 1465 (9th Cir. 1993) (holding that identification testimony by a law enforcement officer identifying the defendant as bank robber from surveillance photographs "ran the risk of invading the province of the jury and unfairly prejudicing," and remanding for a harmless error analysis). While the reasoning in these two out-of-Circuit cases cited by Defendant has some persuasive force, they are not binding on this Court, and the Second Circuit's decision in *Walker* points to a different outcome in this Circuit.  *See Walker*, 974 F.3d at 206 (expressly considering but declining to follow the Sixth Circuit's reasoning in *Calhoun*).

his 2013 conviction is DENIED, without prejudice to renewal; (2) the Government's motion to

permit the introduction of evidence of the October 2021 robbery is DENIED as moot; (3) the

Defendant's motion to preclude the Government from soliciting an in-court identification by any

witness other than Officer Whelan is DENIED, without prejudice to renewal; and (4) the

Defendant's motion to exclude Officer Whelan's identification is DENIED, and the

Government's motion to permit the introduction of such evidence is GRANTED, subject to

certain limitations, described above.

      SO ORDERED.

Dated: January 17, 2024
      New York, New York

                        DALE E. HO
              United States District Judge