*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

March 10, 2024

**BY ECF**
The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:     *United States v. James Kelly*, S1 23 Cr. 113 (GHW)

Dear Judge Woods:

      The Government respectfully submits this letter in opposition to the defendant's motion to preclude both the 2021 robbery victim's signed identification of the defendant, *see* Ex. A, as well as any testimony about the victim's prior out-of-court identification. (Dkt. 113.) For the reasons set forth below, the Court should deny the defendant's untimely motion in its entirety.

    **I.**    **Relevant Background**

        A.  Procedural Background

      On March 1, 2023, the defendant was charged in a two-count indictment for robbing a deli in the Bronx at gunpoint on January 15, 2023. (Dkt. 9.) Over the following year, the Government produced extensive discovery relating not only to the January 2023 robbery, but also to a spree of prior robberies committed by the defendant, including two that took place in October 2021 and December 2022. That discovery included, among other items, a signed identification of the defendant made by the victim of the 2021 robbery ("Victim-1") (*see* GX 1201, attached as Ex. A), and the corresponding set book from which the victim identified the defendant, which were both produced to the defendant on March 29, 2023. (*See* Ex. B.)

      In November, the Government provided written notice to the defendant of its intention to offer evidence of the 2021 uncharged robbery pursuant to Rule 404(b) of the Federal Rules of Evidence.[1] On November 20, 2023, the parties filed their initial motions *in limine*. Among other motions, the Government moved to admit evidence of the 2021 robbery under Rule 404(b). (Dkt. 50.) In its motion, the Government previewed the evidence it intended to introduce at trial, including Victim-1's signed identification of the defendant from a twenty-photograph set book.

---

[1] The deadline for the defendant to file any pre-trial motions was October 27, 2023. The defendant did not file any pre-trial motions, including any motions to suppress any prior identification of the defendant. (*See* Dkt. 45 at 1.)

(*Id.* at 6.) In his opposition, which attached the 2021 set book as an exhibit, Kelly complained that the signed identification was "hearsay" and raised "serious Due Process concerns." (Dkt. 57 at 4.) Nevertheless, Kelly did not move to preclude or suppress Victim-1's prior identification of the defendant, on that or any other basis. Nor did he request a hearing to challenge the procedure by which the 2021 identification occurred. Instead, Kelly's motions focused exclusively on the admissibility of other identification evidence, including the identification of the defendant by Officer Whelan, who arrested the defendant in December 2022 in connection with a third, uncharged robbery, and who also later identified Kelly from surveillance video captured in the aftermath of the 2023 robbery. Kelly also moved to preclude any in-court identification of the defendant by "any witness" to the robberies, particularly any witnesses who had not previously identified the defendant. (Dkt. 46 at 4.)[2]

On January 4, 2024, the Government superseded with an additional count, now charging the defendant with the October 2021 robbery. The following week, the Honorable Dale E. Ho held a conference on the parties' respective motions *in limine*. During that conference, Judge Ho granted the defendant's request to file supplemental motions regarding "newly disclosed evidence by the Government," including "anything that you did not have at the time that the initial date for filing motions *in limine* was." (Jan. 8, 2024 Tr. at 80:10-12.) At that time, defense counsel also made an application to move to suppress or exclude Victim-1's prior identification, arguing that the defendant should be permitted to challenge the identification procedure in light of the superseding indictment. (*Id.* at 77:9-13.) While Judge Ho did not rule on the defendant's request, he observed that the purpose of the defendant's original motions *in limine* "was to exclude evidence of the 2021 robbery," and added that, while the Court was "not going to rule here today as to what [the defendant] can and cannot file a motion on . . . I am unlikely to grant any motion that could have been filed at the time of the original date for motions *in limine*." (*Id.* at 80:19-20.)[3] Since that time, the defendant has filed numerous additional motions *in limine* seeking to admit—or preclude—additional evidence in this case. None of those motions challenged Victim-1's identification of the defendant.

Jury selection for the defendant's forthcoming trial is scheduled to proceed on Monday, March 11, 2024. On Friday night, with trial scheduled to start the next business day, the defendant filed the instant motion, moving to preclude not only Victim-1's signed identification of the defendant, but also "any testimony regarding said prior out-of-court identification." (Dkt. 113 at 1.) In the alternative, the defendant requests "an evidentiary hearing" on the procedure for Victim-1's identification of the defendant. (*Id.*) The motion is meritless.

---

[2] As part of the parties' initial round of briefing in November 2023, the Government also provided the defendant with early Jencks Act materials regarding the identification procedure conducted with Victim-1.

[3] At the January 4, 2024 conference, the Government indicated that it was not intending, at that time, to elicit an in-court identification of the defendant, but that it would be eliciting Victim-1's prior identification of the defendant, as well as the basis for that identification.

### B. Victim-1's Identification of the Defendant

On Sunday October 10, 2021, at approximately 8:50 p.m., the defendant robbed a deli located on 180th Street in the Bronx. As captured on audio-video surveillance footage, the defendant was wearing all black—a black jacket over a black hoodie sweatshirt, black pants, black sneakers, a black brimmed hat with a black hood pulled up over the hat, and a black face mask. He went behind the store counter, asked for marijuana and money, and threatened to kill and shoot Victim-1, as captured on the audio portion of the store's surveillance video. Victim-1 removed several hundred dollars from the cash register and handed it to the defendant. Although the defendant did not openly display a firearm, he had his hands in his pocket in a manner consistent with holding a firearm out of sight. As the defendant was walking out of the store, he directed Victim-1 to lie down on the ground and threatened again to "shoot the shit" out of Victim-1 if he moved.

After the defendant left, Victim-1 called 911. Once police arrived, Victim-1 told the police that he recognized the robber, telling the police that, while he did not know the defendant's name, he had seen him in the store before, and recognized him from the area. Officers then brought the victim to the precinct, collected a series of set books featuring photographs from local arrests, and provided the first set book to the victim. The set book contained photographs of nineteen men and one woman. (*See* Ex. B.) The victim positively identified the defendant from the set book, explaining to NYPD officers that he had known the defendant for at least a year leading up to the October 10, 2021 robbery because the defendant had previously visited the store. Victim-1 also told the NYPD that the defendant lived or spent significant time near the 800 East 180th Street area of the Bronx, i.e., an area that was approximately two blocks from the robbed store.

### II. Discussion

The defendant's motion is both untimely and, in any event, meritless. It should be denied on both grounds.

First, and as the above history captures, the defendant's motion is untimely. The Government produced evidence of the 2021 robbery, including the victim's signed identification of the defendant as the robbery, on March 29, 2023. Beginning in November 2023, the Government provided notice of its intention to seek to admit that very same identification into evidence: first, when it provided Rule 404(b) notice; and second, when it superseded and charged the defendant with the 2021 robbery. Indeed, the defendant's initial motions *in limine* attached the very set book the defendant now seeks to challenge. Nevertheless, despite devoting pages of his motions *in limine* to challenging: (a) other identification evidence on identical grounds and (b) other evidence of the October 2021 robbery, including any in-court identification by any witness to either robbery, the defendant did not move to preclude or suppress Victim-1's prior identification. Nor did the defendant attempt to renew that request during the parties' successive motions *in limine* through February 2024, or in the defendant's supplemental motions *in limine* from last week. The defendant does not dispute this procedural history, but makes no effort to explain why the Court should now entertain his eleventh-hour application.

In addition to being untimely, Kelly's request is also meritless. There was nothing suggestive about either Victim-1's identification or the procedure that led to it. As a general matter, the Constitution "protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit." *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012). Witness identifications should therefore be excluded only where "improper police conduct" occurred that was "so unnecessarily suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.* at 238; *see Manson v. Brathwaite*, 432 U.S. 98, 113 (1977); *Simmons v. United States*, 390 U.S. 377, 384–85 (1968). Outside of those narrow circumstances, the "Draconian sanction" of exclusion may not be considered, and the reliability of the identification evidence is for the jury to weigh. *Perry*, 565 U.S. at 239.

Federal courts follow a two-pronged analysis in ruling on the admissibility of identification evidence. *Perry*, 565 U.S. at 238–40; *Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009). First, the defendant must show that the identification was "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *United States v. DiTommaso*, 817 F.2d 201, 213 (2d Cir. 1987); *see Raheem v. Kelly*, 257 F.3d 122, 134 (2d Cir. 2001). That is a high threshold to meet, as the defendant must show, under the totality of the circumstances, "a very substantial likelihood of irreparable misidentification." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990). If the defendant cannot make such a showing, "the trial identification testimony is generally admissible without further inquiry into the reliability of the pretrial identification. In that circumstance, any question as to the reliability of the witness's identification goes to the weight of the evidence, not its admissibility." *Id.*

The defendant's motion fails to identify anything suggestive about Victim-1's identification of the defendant, let alone an identification that was "so unnecessarily suggestive" that it was tantamount to a mistaken identification. Both sides agree that, within an hour of the robbery, Victim-1 told law enforcement that he knew the defendant, recognized that the defendant lived in the neighborhood, and was provided a set book featuring photographs of individuals from the area near where the robbery had taken place. No one told Victim-1 how the photographs were obtained prior to his review of the photographs. Nor did anyone inform Victim-1 whose photographs were included inside, or anything about the book's contents. After reviewing the first set book, which contained twenty different photographs, including a photograph of the defendant, Victim-1 identified the defendant as the robber. Apart from a single photograph of a Black woman and a white man, the set book contained eighteen photographs of similarly aged Black and Latino men, including a photograph of the defendant. Nor did the defendant's photograph stand out from the set book, as the defendant claims. Of the eighteen men pictured in the set book, several resemble the defendant. Almost all of the men have facial hair, and several of the men are heavy-set or wear their hair in braids. This procedure is no different from similar set book identifications that have been upheld in this district. *See United States v. Bermudez*, No. 22 Cr. 335 (NSR), 2024 WL 81843, at *4 (S.D.N.Y. Jan. 8, 2024) (noting that the defendant "faces an uphill battle to suggest a twenty-nine photograph lineup is unduly suggestive"). Indeed, courts in this district have held that, contrary to the defendant's claims, "[t]here is nothing inherently suggestive about a sequential display of a group of photographs." *United States v. Rivera*, No. 19 Cr. 131 (PAE),

2019 WL 6497504, at *5 (S.D.N.Y. Dec. 3, 2019) (quoting *Wagner v. Ercole*, No. 06 Civ. 814 (HBP), 2009 WL 6443854, at *10 (S.D.N.Y. June 12, 2009)).

The defendant's reliance on *United States v. Morgan*, 690 F. Supp. 2d 274, 288 (S.D.N.Y. 2010), is equally misplaced. In *Morgan*, unlike here, the set book contained mugshot *pedigrees*—i.e., printouts of several of the defendants' full criminal histories, including prior arrests, convictions, names, and aliases. *Id.* at 280-82. Here, while the set book contained an identifying number and arrest date, it contained none of the suggestive information at issue in *Morgan*. Indeed, as the Court in *Morgan* noted—contrary to the defendant's position here—"[t]he due process clause does not require law enforcement officers to scour about for a selection of photographs so similar in their subject matter and composition as to make subconscious influences on witnesses an objective impossibility." *Id.* at 283.

Nor has the defendant provided a basis for a hearing on the identification procedures. The defendant's threadbare motion fails to identify any disputed material facts about Victim-1's identification procedure.[4] *See, e.g.*, *United States v. Noble*, No. 07 Cr. 284 (RJS), 2008 WL 140966, at *1 (S.D.N.Y. Jan. 11, 2008) ("A defendant is entitled to an evidentiary hearing on a motion to suppress only if the defendant establishes a contested issue of material fact."). If the moving papers do not create a genuine dispute as to any material fact, the court can decide the matter on the factual record established by the papers. *See United States v. Caming*, 968 F.2d 232, 236 (2d Cir. 1992); *United States v. Martinez*, 992 F. Supp. 2d 322, 325-26 (S.D.N.Y. 2014). The defendant's request for a hearing is therefore not only untimely, but also unwarranted.

In any event, if, at the eleventh-hour, the Court grants the defendant's request to preclude the admission of Victim-1's prior identification of the defendant, the Government will seek to elicit an in-court identification of the defendant by Victim-1. It is well-established that "[a]n in-court identification is . . . admissible, despite an improper pre-trial identification procedure, if the witness is familiar with the defendant prior to the incident." *United States v. Crumble*, 18 Cr. 32 (ARR), 2018 WL 1737642, at *2 (E.D.N.Y. Apr. 11, 2018). The court must determine whether the identification evidence is nevertheless "independently reliable" based on the totality of the circumstances. *Brisco*, 565 F.3d at 89; *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir. 1991); *Brathwaite*, 432 U.S. at 114. Among the factors to be considered are: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972). No single factor is dispositive. *United States v. Concepcion*, 983 F.2d 369, 378 (2d Cir. 1992). As Kelly concedes, Victim-1 will testify that he had seen the robber—whom he recognized as Kelly—several times before the robbery, that Kelly had previously threatened him just weeks before the robbery took place, and that he recognized

---

[4] Both the defendant's motion, and the Government's opposition, draw on *Jencks* Act material produced in advance of Monday's trial. Given that the defendant fails to identify any disputed material facts about Victim-1's identification procedure, the Government has not attached those materials here. *See, e.g.*, 3506-001 through 3506-004 (regarding Officer Donovan's identification procedure); *see also* 3504-010, 3504-014, 3504-015, 3504-017, 3504-018 (reflecting Victim-1's anticipated testimony regarding his identification of the defendant).

the robber during the robbery itself. "Given these repeated exposures between [the witness] and [the defendant], there is virtually no chance that the use of the Set Book was so suggestive as to prevent the [witness] from making a reliable in-court identification." *Morgan*, 690 F. Supp. 2d at 289.

### III.   Conclusion

For the reasons set forth above, the defendant's motion should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: _____
Georgia V. Kostopoulos
Connie L. Dang
David R. Felton
Assistant United States Attorneys
Southern District of New York
(212) 637-2212 / -2543 / -2492

cc:   Michael Bradley, Esq.
      Donald Yannella, Esq.