USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/1/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
UNITED STATES OF AMERICA,                                      :
                                                               :
                                                               :      1:23-cr-113-GHW
                                                               :
                -v-                                            :      MEMORANDUM OPINION &
                                                               :      ORDER
JAMES KELLY,                                                   :
                                                               :
                                Defendant.                     :
                                                               :
-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

  Defendant James Kelly is charged with the commission of a robbery of a deli in the Bronx, New York. The victim of, and only witness to, the robbery was shown a photo book by the police, and he identified Defendant's photo as the man who had robbed him. The photo book was chosen not because of any physical description the witness gave investigators; rather, the photo book was chosen because it contained photos of people associated with the location at which the robber, according to the witness, frequently hung out. Defendant moves to suppress this out-of-court identification on the grounds that the photo book procedure was unduly suggestive. Because the investigating officers did not improperly arrange the procedure to single out Defendant, the procedure was not unduly suggestive. And in any event, the witness's identification was sufficiently reliable to warrant admission. Defendant's motion is therefore DENIED.

## I.  PROCEDURAL HISTORY

  James Kelly was named as a defendant in a complaint that asserted that he had engaged in a Hobbs Act robbery on or about January 15, 2023 and that he had brandished a firearm during the commission of the crime. Dkt. No. 1. On March 1, 2023, the grand jury returned a two-count indictment against Mr. Kelly, charging him with Hobbs Act robbery, in violation of 18 U.S.C.

§§ 1951 and 2, and the use and brandishing of a firearm in connection with that offense, in violation of 18 U.S.C. §§ 924(a)(1)(A)(i), (ii), and 2.  Dkt. No. 9.

On January 4, 2024, the Government filed a superseding indictment against Mr. Kelly, charging Mr. Kelly with two counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and the use and brandishing of a firearm in connection with the second robbery, in violation of 18 U.S.C. §§ 924(a)(1)(A)(i) and (ii).  Dkt. No. 68.  The additional robbery count charges that Mr. Kelly robbed a convenience store in the vicinity of East 180th Street in the Bronx, New York on or about October 10, 2021.  *Id.*

On August 15, 2024, Defendant moved to preclude the Government from introducing an out-of-court identification from a photo lineup related to the October 10, 2021 robbery.  Dkt. No. 154.  He also requested a pretrial evidentiary hearing to determine whether the pretrial identification procedures were so suggestive as to taint a later in-court identification.  *Id.*  Defendant claims that the identification was the result of an unduly suggestive procedure because the investigator did not compile the photo lineup based on a detailed description of the robber and because "[t]here were few if any look-alike photographs" in the photo book.  *Id.* at 3–4.

In response to Defendant's motion, the Court held an evidentiary hearing on September 25, 2024.  Dkt. No. 161.  *See United States v. Gershman*, 31 F.4th 80, 92–93 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 816 (2023) ("To determine whether a witness should be permitted to identify a defendant at trial, a defendant may request a pretrial evidentiary hearing under *United States v. Wade*, [388 U.S. 218, 239-243 (1967)].").  At the September 25, 2024 hearing, the Court heard the testimony of Mohamed Almuntaser, the witness whose identification is at issue, and Detective Miguel Donovan, the investigator who facilitated the photo lineup for Mr. Almuntaser.

2

## II. FACTUAL FINDINGS

Around 9:00 p.m. on October 10, 2021, a man entered a deli on 180th Street in the Bronx, New York. The man was wearing a hood and a mask that covered the lower half of his face, leaving his eyes and forehead visible. The man went behind the counter and demanded that Mr. Almuntaser, who was working as the cashier of the deli that night, give him the money in the cash register and weed. Mr. Almuntaser was facing the man, and the man came within one or two feet of Mr. Almuntaser during the interaction. The two talked back and forth while Mr. Almuntaser told the man that he did not have any weed. The man eventually told Mr. Almuntaser to lay face-down on the floor and count to one hundred, threatening to shoot Mr. Almuntaser if he moved. Shortly after the man left, Mr. Almuntaser called the police.

The New York City Police Department ("NYPD") arrived at the deli approximately ten minutes after the robbery. Mr. Almuntaser told the responding officers, "I know that guy," referring to the man who robbed the store. Mr. Almuntaser also told the officers that the man lives or hangs around the buildings near 800 East 180th Street. He recognized the robber as someone who had been a customer of the deli. Mr. Almuntaser had seen the robber approximately 50 or 60 times before the night of the robbery. Mr. Almuntaser recognized the robber based on his size, his voice, and the top part of his face, all of which he recognized from the robber's previous visits to the deli. Mr. Almuntaser described the man as a dark-skinned Hispanic male, but at the September 25, 2024 hearing, he indicated that it was difficult to identify the robber's ethnicity and that he was not sure whether the man was Hispanic or Black.

Later that evening, Mr. Almuntaser went to the police station and at about 10:45 p.m. met with Detective Miguel Donovan of the NYPD. Detective Donovan interviewed Mr. Almuntaser in the waiting area of the 48th Precinct Detective Squad. Detective Donovan had not responded to the scene of the crime or reviewed any videos of the robbery. Mr. Almuntaser told Detective

Donovan that he knew who the robber was because he recognized the man as a frequent customer for about a year but that he did not know the man's name. Mr. Almuntaser also told Detective Donovan that the robber would hang around 800 East 180th Street, a residential building. Mr. Almuntaser gave Detective Donovan a general description of the robber's appearance, but at the time of the September 25, 2024 hearing, Detective Donovan did not remember what description he was given.

Based on Mr. Almuntaser's statement that the robber hung around 800 East 180th Street, Detective Donovan retrieved a previously compiled photo book. The photo book was labeled to indicate that it was associated with 800 East 180th Street and the YGz gang. The NYPD believes that the area of 800 East 180th Street is a location associated with the YGz gang. The photos were selected for this book because the people in them had been arrested in connection with the YGz gang or because they had some other connection with the area of 800 East 180th Street. The robber's physical description did not play a role in Detective Donovan's selection of that particular photo book. The photo book, which had been compiled on July 18, 2021, contained photos of nineteen individuals' faces, each marked with an NYPD heading, a New York State identification number, an arrest number, and an arrest date. Detective Donovan was not the one who compiled the photos for this set, but Detective Donovan had used this photo book for identification purposes three to four times before the night of October 10, 2021.

Of the nineteen photos, sixteen appear to show Black men. One shows a Black woman, and another shows a white man. One photo shows an older Black man, but the remaining photos are of younger individuals. Five of the photos show Black men with longer hair, and three with braids. While six of the depicted Black men have a much darker skin tone than Defendant, at least nine of the Black men in the photo book appear in the photos to have a similar skin tone to Defendant.

4

Detective Donovan told Mr. Almuntaser to review the photo book and to let him know if any of the photos were of the man who robbed him. Detective Donovan told Mr. Almuntaser to be extremely sure that the person he identifies was the one who robbed him, and Detective Donovan told him that the person who robbed him may not be in the set.

Mr. Almuntaser flipped through the photo book. No one said anything to him while he reviewed the book. About three to five pages into the photo book, and after only two to three minutes of reviewing the book, Mr. Almuntaser pointed out the picture of Defendant. Mr. Almuntaser expressed certainty that Defendant was the one who had robbed him. Mr. Almuntaser then did not continue looking through the photo book after identifying Defendant's photo. Mr. Almuntaser signed the photograph he identified.

### III. DISCUSSION

#### A. Legal Standard

"The Supreme Court has recognized that due process can sometimes prevent a witness who identified a defendant before trial from identifying the defendant at trial." *United States v. Gershman*, 31 F.4th 80, 92 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 816 (2023) (citing *Simmons v. United States*, 390 U.S. 377, 384–85 (1968), and *Perry v. New Hampshire*, 565 U.S. 228, 238–39 (2012)). "But those circumstances are scarce—'we will exclude a pre-trial identification only if it was *both* produced through an unnecessarily suggestive procedure *and* unreliable.'" *Id.* (quoting *United States v. Bautista*, 23 F.3d 726, 729 (2d Cir. 1994)).

"At step one, the Court must determine whether 'the pretrial identification procedures were unduly suggestive of the suspect's guilt.'" *Id.* (quoting *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990)). "If the procedures were not unduly suggestive, then 'the trial identification testimony is generally admissible without further inquiry into the reliability of the pretrial identification.'" *Id.* (quoting *Maldonado-Rivera*, 922 F.2d at 973). If, on the other hand, "the

5

procedures were unduly suggestive," then the Court "must consider whether the in-court identification is independently reliable rather than the product of the earlier suggestive procedures." *Id.* (quoting *United States v. Al-Farekh*, 956 F.3d 99, 110 (2d Cir. 2020)). "To determine whether a witness should be permitted to identify a defendant at trial, a defendant may request a pretrial evidentiary hearing under *United States v. Wade*, [388 U.S. 218, 239–43 (1967)]." *Id.*

"The fairness of a photographic array depends on a number of factors, including the size of the array, the manner of presentation by the officers, and the array's contents." *United States v. Maldonado-Rivera*, 922 F.2d 934, 974 (2d Cir. 1990). "If there is nothing inherently prejudicial about the presentation, such as use of a very small number of photographs or of suggestive comments, the 'principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that [that person] was more likely to be the culprit.'" *Id.* (quoting *Jarrett v. Headley,* 802 F.2d 34, 41 (2d Cir. 1986)).

### B. The Identification Procedure Was Not Unduly Suggestive

Because investigators did not act improperly and because the procedure used did not suggest that Defendant was the culprit, the identification procedure was not unduly suggestive.

#### 1. The Investigators Did Not Act Improperly

Because the investigators did not compile or choose the photo book so as to improperly "arrange the suggestive circumstances," the identification procedure was not unduly suggestive. *Perry v. New Hampshire*, 565 U.S. 228, 240 (2012). The Supreme Court refused to "extend[] pretrial screening for reliability to cases in which the suggestive circumstances were not arranged by law enforcement officers." *Id.* at 232. A suggestive procedure is undue and thus requires screening for reliability only if "improper law enforcement activity is involved." *Id.* at 233; *see also United States v. Little*, 640 F. Supp. 3d 306, 316–17 (S.D.N.Y. 2022) ("Based on the evidence adduced at the

6

suppression hearing, the Court finds that Rosas's identification of Little was not arranged by law enforcement—let alone improperly so. For that reason alone, it is admissible; it will be for the jury to determine whether to credit the identification as reliable." (internal citation omitted)).

In this case, Detective Donovan did not arrange the photo book so as to improperly suggest identification of Defendant. Detective Donovan did not compile the photos; the book was previously compiled and labeled to identify its contents as relating to 800 East 180th Street. Detective Donovan selected the book based solely on the location Mr. Almuntaser said the robber would hang out—800 East 180th Street. Mr. Almuntaser's physical description played no role in the selection of the photos. This is reflected in the diversity of images: the presence of a Black female, a white male, and an older Black male. There is no evidence that there were other photo books containing images of people associated with 800 East 180th Street amongst which Detective Donovan selected. There is thus no evidence that Detective Donovan chose the preset photo book to intentionally single out Defendant. And, therefore, the identification procedure was not unduly suggestive.

Contrary to Defendant's argument, the case law does not support the proposition that a photo identification is necessarily unduly suggestive if the photo book is not compiled based on a detailed description of the perpetrator. *See, e.g.*, *United States v. Rivera*, No. 19 CR. 131 (PAE), 2019 WL 6497504, at *4 n.1 (S.D.N.Y. Dec. 3, 2019) (admitting a photo identification where the procedure "was not prompted by a witness's identification of an as-yet unidentified perpetrator with a particular characteristic or characteristics," and "[t]he [p]hoto [b]ooks instead were used across the board"). While there may be circumstances in which a photo identification procedure is unduly suggestive even though no description of the perpetrator was given or used by investigators, the Court here finds that Detective Donovan did not select this particular photo book so as to suggest to Mr. Almuntaser that Defendant was more likely to be the culprit.

### 2. The Photo Book Was Not Suggestive

Further, the photo book procedure was not suggestive because there was nothing inherently prejudicial about the way it was presented to the witness and because Defendant did not stand out from all of the other photos as to suggest that Defendant was more likely to be the culprit.

There was nothing "inherently prejudicial" about the presentation of the photo book. *Maldonado-Rivera*, 922 F.2d at 974. Detective Donovan did not say anything during the procedure so as to alert Mr. Almuntaser to Defendant's photo or any other photo; in fact, Detective Donovan told Mr. Almuntaser that the robber's photo may not be in the book at all. *See United States v. Brown*, 167 F. Supp. 3d 447, 450 (W.D.N.Y. 2016) (holding it sufficient to tell the witness that she "may or may not know any of the individuals in the photo array" and "if she did recognize anyone, to let [the investigator] know").

Nor did Defendant stand "out from all the other photographs" as to suggest to Mr. Almuntaser that Defendant "was more likely to be the culprit." *Maldonado-Rivera*, 922 F.2d at 974. Nineteen—the number of photos in this set book—is well above the number of photos acceptable so as not to draw undue attention to a suspect. *See United States v. Maldonado-Rivera*, 922 F.2d 934, 974 (2d Cir. 1990) ("The size of the array, nine photographs, was not so small as to cause undue focus."); *United States v. Muhanad Mahmoud Al-Farekh*, 956 F.3d 99, 112 (2d Cir. 2020) ("We have also held that an array of nine, or even as few as six, photographs was not so small as to suggest the identification of the suspect . . . ."). While Defendant is correct that the photo book contained photos of an older male, a white male, and a female, there were still at least nine photos of males around Defendant's age with comparable skin color. *See United States v. Valdez,* 1993 WL 14650, at *3 (S.D.N.Y.1993) (finding photo array not suggestive where individuals ranged from "medium skin tone to dark skin tone" and "four or five of the other individuals have comparable skin color"). "[T]he due process clause does not require law enforcement officers to scour about for a selection

8

of photographs so similar in their subject matter and composition as to make subconscious influences on witnesses an objective impossibility." *United States v. Morgan*, 690 F. Supp. 2d 274, 283 (S.D.N.Y. 2010) (quoting *United States v. Bubar,* 567 F.2d 192, 199 (2d Cir.1977)); *see also United States v. Maldonado-Rivera*, 922 F.2d 934, 974–75 (2d Cir. 1990) ("The ethnicity of the nine persons depicted is indeterminate, and the majority may well be Hispanic.  All but one or two of the subjects appear to be in their 30's.  All nine have a small amount of facial hair.  Two appear to be balding, and two others have hairlines that may be receding.  In sum, several of the persons depicted met Gassin's description of Camacho, and there was no feature of Camacho's photo that made his stand out from all the rest.").  And, again, in any event, Detective Donovan did not select the photo book based on Mr. Almuntaser's description.  Thus, there can be no argument that the images were designed to indicate that Defendant was responsible.

Defendant's argument that the arrest notations are unduly suggestive is belied by the case law.  Each photo was marked with the same notations:  an NYPD heading, a New York State identification number, an arrest number, and an arrest date.  "[T]he presence of several similarly marked photographs in the array meant that no single one suggested itself in that respect as depicting the person suspected by law enforcement agents." *Jarrett v. Headley*, 802 F.2d 34, 44 (2d Cir. 1986) (where a photo array was marked with "a law enforcement legend"); *see also United States v. Concepcion*, 983 F.2d 369, 378–79 (2d Cir. 1992) (holding that a photo array was not suggestive just because the photos were "mug shots" with a legend indicating where each person had been arrested).  Therefore, the photo book procedure was not unduly suggestive.

### C. The Witness's Identification Is Independently Reliable

Because the Court has found that the identification procedure was not unduly suggestive, it need not address the question of reliability.  Nonetheless, Mr. Almuntaser's identification was sufficiently reliable to allow its admission in any event.  "[T]he factors to be considered in evaluating

9

the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972).

Mr. Almuntaser had ample opportunity to view the robber and hear his voice during the encounter. During the robbery, the perpetrator came within one or two feet of Mr. Almuntaser, and the two exchanged words while the robber pressed him about giving him weed. Mr. Almuntaser thus got a clear view of the unmasked part of the robber's face and his build, and he clearly heard the robber's voice.

Mr. Almuntaser's prior description was not so inaccurate as to weigh against reliability. While Mr. Almuntaser's initial description to the responding officers was that the robber was a dark-skinned Hispanic male, it is difficult to discern national origin from appearance alone, as Mr. Almuntaser indicated during his testimony. That Mr. Almuntaser described the robber as dark-skinned is not inconsistent with a later identification of Defendant.

Further, Mr. Almuntaser expressed a high level of certainty in his identification, which occurred shortly after the incident. When the police arrived on the scene within minutes of the robbery, Mr. Almuntaser told the officers that he "know[s] that guy" as someone who lives or hangs around the area. He knew who the man was from his voice and build but simply did not know his name. Mr. Almuntaser swore to having interacted with the robber 50 or 60 times in the deli over the course of a year and thus having familiarity with the man's features. *See United States v. Morgan*, 690 F. Supp. 2d 274, 288 (S.D.N.Y. 2010) (holding that an undercover officer's identification is reliable because he "engaged in multiple 'buy' transactions with [the defendant] over an extended period of time"). Mr. Almuntaser viewed the photo book within two hours of the crime, and when he saw Defendant's photo, he immediately pointed it out to Detective Donovan; expressed certainty

that Defendant was the one who had robbed him; and did not continue to review the photo book. *United States v. Concepcion*, 983 F.2d 369, 378 (2d Cir. 1992) ("[W]hile neither [witness] had given the authorities a description of [the defendant] prior to identifying him at the hospital, their identifications were made within hours or minutes of the shooting, and they were unequivocal. We see no error in the district court's conclusion that the pretrial identifications by those two witnesses were sufficiently reliable to warrant admission of their in-court identifications.").

The evidence before the Court supports the conclusion that Mr. Almuntaser knew the man who he believed had robbed him prior to viewing the photo book and simply used the photo array to convey this knowledge to the police. His identification is therefore sufficiently reliable to warrant admission.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's motion to preclude the Government from introducing Mr. Almuntaser's out-of-court identification is DENIED.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 154.

SO ORDERED.

Dated: October 1, 2024
       New York, New York

_____
GREGORY H. WOODS
United States District Judge